THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY v. WILLIAM FOX.

1. MASTER AND SERVANT; *Care and Diligence.* At common law, the master assumes the duty toward the servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work; and where the service required of an employe is of a peculiarly dangerous character, it is the duty of the master to make reasonable provision to protect him from the dangers to which he is exposed while engaged in the discharge of his duty.

2. EMPLOYÉ, *When a Substitute for Master.* At common law, whenever the master delegates to any officer, servant, agent or employe, high or low, the performance of any duty which really devolves upon the master himself, then such officer, servant, agent or employe stands in the place of the master and becomes a substitute for the master, and the master is liable for his acts or his negligence. (*Rld. Co. v. Moore*, 29 Kas. 632.)

3. FACTS STATED—*Company Liable.* A foreman or boss car repairer of a railroad company was put in charge of three subordinate car repairers whose duty it was to repair cars while standing on the track in the yard of the company in which trains were to be made up, at St. Joseph, Mo. The company left everything concerning the work of repairing the cars, the control of the subordinate employes, and their protection while engaged in their work, to such foreman or boss repairer. The foreman directed a car to be set on the track at a particular place for the purpose of being repaired; he then ordered two of his subordinates to go under

Statement of the Case.

the car for the purpose of repairing it; these employes took with them the tools necessary to make the repairs, and while they were engaged in repairing the car, other cars pushed this car along upon the track in such a manner as to cause the car to break and mangle the left arm of plaintiff, one of the subordinate employes. Plaintiff had nothing to do with the movement of the cars pushed against the car under which he was working; he did not know and could not have known, in the situation he was in, that cars were being pushed against the car under which he was at work, until they struck the car; no notice or warning from the foreman, or by signal bell or otherwise, was given him of the approach of the cars; it was not in his power to prevent the collision of the cars, or to save himself by the exercise of reasonable care from injury. At the time, the foreman was present overseeing the work, and it was his duty to notify the yard master having control of the management of the cars, when and where he was going to repair a car. No signal flags were furnished by the company or used by the foreman to designate the car that was being repaired. *Held*, That it was the duty of the foreman or boss car repairer as the representative of the company to see that reasonable precautions were taken to protect and guard his subordinates while engaged in the discharge of their duties under the car where he had placed them, against danger arising from the switching of cars and making up of trains on the same track; and for an injury resulting from his negligence in this respect, the company is liable.

*Error from Atchison District Court.*

ACTION by *Fox* against *The Railroad Company*, to recover damages for bodily injuries. The court below, in its instructions to the jury, states the substance of the petition and answer. (See *post.*) Upon the trial at the June Term, 1883, the plaintiff, *Fox*, testified among other things, that at the time of the injuries complained of he was in good health, stout, hearty, about thirty years old, and married.

Thomas H. Doyle, whose deposition was read on behalf of plaintiff, testified therein as follows:

"I am a physician and surgeon, and have been since the year 1865. I have been practicing as such in St. Joseph, Missouri, since the year 1869. I was called in to see the plaintiff on the 3d day of March, 1882. I found his arm so terribly mangled that it was impossible to save any part of it, and I amputated it at the shoulder-joint."

At the close of plaintiff's evidence, defendant demurred thereto on the ground that it does not prove facts sufficient to

constitute a cause of action. The court overruled the demurrer, the defendant excepting. Thereupon the defendant introduced its evidence. Certain instructions asked for by the plaintiff were refused by the court, the plaintiff excepting. Certain instructions asked for by the defendant were refused, the defendant excepting. The court then charged the jury as follows:

"1. It is claimed by the plaintiff in his petition in this case: That he was in the employ of the defendant as a car repairer in the yards of the defendant at St. Joseph, Missouri, on March 3, 1882; that he was ordered by the superintendent, or boss of repairs, then in charge, to go under a car to make certain repairs thereon, which order he obeyed; and while performing his duties, certain other cars were by the negligence of defendant and its other employes, shoved, pushed, and kicked violently to and upon the car under which the plaintiff was working, without any warning or notice of any character whatever to the plaintiff, and that he was injured by the concussion of said cars and the moving of the one under which he was working; and further, that said superintendent, or boss of repairs, was charged with the duty of seeing to the reasonable safety of the employes of the defendant engaged in the repairing of cars, and that he was wholly incompetent for the performance of his duties, which was well known to the defendant at the time, and was unknown to the plaintiff; that he was at the time an habitual drunkard, and had been for a long time prior thereto, which fact was well known to the defendant, or could have been known by said defendant by the exercise of ordinary observation and prudence. The plaintiff claims damages in the sum of $20,000.

"2. The defendant in its answer denies generally the allegations contained in the plaintiff's petition, and alleges negligence on the part of the plaintiff contributing to whatever injury he may have received, and that by the laws of Missouri no action can be maintained for such injury.

"3. It is admitted in open court that the common law was and is in full force in Missouri in this class of cases.

"4. Whether the plaintiff is entitled to recover, or not, therefore, depends upon the laws of Missouri, where the injury is alleged to have happened. By the common law, in force in Missouri, the master is not liable to his servant for

injuries to him produced by the negligence of a fellow-servant engaged generally in the same common employment, provided there be no negligence in the appointment of such negligent servant, or in the retention of such servant after notice of his incompetency. This rule of law proceeds upon the theory that where a master employs several servants to work for him in the same common employment, the negligence of one of them toward the other is not the fault of the master, and is not therefore attributable to him as his negligence; but if the master employs a servant to work for him among others, knowing him to be incompetent, or if he retain him after knowledge of this incompetency, and injury to his fellow-servant results from his incompetency, then the master is liable for such injury to a fellow-servant if such fellow-servant himself exercised ordinary care; for it is the duty of the master to exercise ordinary care in the selection and in the retention of his employe, or servant.

"5. But the rule that the master is not liable to his servant for injuries to him produced by the negligence of a fellow-servant engaged generally in the same common employment, is subject also to the qualification that where the master leaves everything in the hands of a middle-man, reserving to himself no discretion, then the middle-man's negligence is the master's negligence, for which the master is liable. And the plaintiff now claims that this case comes within this qualification.

"6. If you find from the evidence that Lovell was the superintendent or boss of car repairs, and that he was by his employment and position vested with full discretion and authority to direct the plaintiff to go under the car in the yards to make the repairs, and to direct other servants to keep watch of moving cars, or to do so himself, and that the whole management of the repairs of the cars in the yards, and the direction of the men under him in doing so, was vested in him, the defendant and its superior officers reserving no discretion in themselves as to the direction of the movements of said car repairers in doing their work, then the negligence of the boss of car repairs would be the negligence of the defendant.

"And if such was the relation of the boss car repairer to the defendant and to the plaintiff, and the plaintiff was under the car by direction of said boss car repairer, doing the work, then it was the duty of the defendant and of said boss car

repairer to use reasonable care to protect the plaintiff while thus engaged from danger arising from the switching of cars, and the making up of trains on the same track; and for an injury resulting from the want of such care the defendant will be liable, unless the plaintiff, by a failure to exercise ordinary care, contributed to his own injury, in which case he could not recover.

"7. Ordinary care is that degree of care which men of ordinary prudence usually exercise in their own affairs. This degree of care will therefore vary with the exigencies of each particular case. If the defendant exercised that degree of care which, having respect to the exigencies of the particular service, ought reasonably to be observed, then the defendant is not liable, and if the plaintiff exercised the same degree of care, then he has not forfeited his right to recover by reason of contributory negligence if he had a right of action against the defendant for the injury.

"8. If you do not find that the plaintiff is entitled to recover of the defendant on the ground that the boss car repairer was a middle-man, representing the company and standing in its stead, then it will be your duty to examine the other branch of the case, namely, whether or not the boss of car repairs was incompetent, or not, and if incompetent, then whether or not the defendant knew of such incompetency, or ought to have known it by the exercise of ordinary care and prudence, and whether or not the injury to the plaintiff resulted from such incompetency.

"If the boss car repairer was a mere fellow-servant with the plaintiff in the same common employment, then the plaintiff cannot recover of the defendant by showing simply that his injury was the result of the carelessness of such fellow-servant, but in order to recover he must also show that such fellow-servant was incompetent to discharge his duties at the time of such injury, and that such injury resulted from such incompetency, and that such incompetency was before that time known to the defendant, or might have been known by the exercise of ordinary care, or that the defendant did not use proper care in the employment of such fellow-servant at the time he was employed.

"9. And the law presumes, in the absence of evidence to the contrary, that the defendant exercised proper care in the selection of its servants and employes, and in their retention, and that such servants and employes were competent; and it

devolves on the plaintiff to prove a want of care on the part of the defendant in such selection or retention, and a want of competency on the part of such servant or employe, and to prove that such incompetency was known to the defendant, or ought to have been known by the exercise of ordinary care and diligence, and that the injury was the result of such incompetency. And a single act of negligence is not sufficient to establish the incompetency of a servant or employe.

"10. If you find that the plaintiff is entitled to recover, then the next question for you to consider will be the amount of his recovery. It cannot exceed $20,000, for that is the amount claimed in the plaintiff's petition, and it may be any sum between that and nominal damages which shall seem fair and just in view of the injury sustained, without regard to the character of the parties, as to the needs of the plaintiff, or the ability of the defendant to pay. There is no exact rule for the computation of damages in a case of this kind, but our supreme court has said that 'the nature of recovery is for the loss of time, for expenses, and for physical pain which had resulted up to the commencement of the action, and, if the plaintiff is still disabled from such injury, such further damages as appear from the evidence to be the natural and probable result of such injuries.' Of course you should consider the age, health and physical condition of the plaintiff before and since the injury; his former employment and wages, and his ability to earn money before the injury, and his present capacity and ability to work and earn money; and in fact you should consider all the circumstances of the plaintiff's case.

"11. The burden of proof rests upon the plaintiff, and it devolves upon him to make out all the issues on his part to be proved, and it devolves upon him to make out his case by a preponderance of evidence; but it does not devolve upon him to prove that he was not guilty of contributory negligence; the burden of proof that the plaintiff was guilty of contributory negligence, such as to bar his right of recovery, being upon the defendant.

"12. You are the exclusive judges of all questions of fact, and of the weight of the evidence and of the credibility of the witnesses, and if you find that any witness has testified willfully, corruptly and falsely to any material fact in this case, then it is your province to determine how much, or whether the whole, of his testimony should be disregarded.

"13. Two forms of verdict will be presented to you — one suitable for finding in favor of the plaintiff, and for assessing the amount of his recovery, and the other suitable for finding in favor of the defendant.

"Certain particular questions of fact will also be presented to you for your answer. It will be your duty to answer in writing each question in accordance with the evidence on that particular point, without special reference to the effect of such answer upon your general verdict, and at the bottom of the series the same must be signed by your foreman in like manner as a general verdict.

"After you have heard the arguments of counsel, the case will be submitted to you for your determination under the law and the evidence."

The jury found a general verdict for the plaintiff, and assessed the amount of his recovery at the sum of $10,000. The jury also answered certain questions of fact submitted by the defendant. Said questions, with the answers thereto, are as follows, to wit:

"1. Was plaintiff injured about the time stated in the petition, by having a car pushed over his arm? A. Yes.

"2. Was plaintiff at the time of such injury an employe of the defendant? A. Yes.

"3. Was plaintiff at the time of such injury engaged as such employe in repairing a car of defendant? A. Yes.

"4. What was the business for which plaintiff was employed by defendant? A. As car repairer.

"5. What other employes, if any, were employed by defendant for the same business? A. Two day repairers, one night repairer, and their foreman.

"6. Was Robt. Lovell engaged with defendant in repairing a car at the time plaintiff was injured? A. Yes; he was overseeing the repairing of the car.

"7. How long before such injury had plaintiff been employed for defendant in repairing cars? A. Some six or eight months.

"8. How long had Robt. Lovell been employed in the business of repairing cars for defendant? A. About twelve years.

"9. How long had plaintiff and Lovell been at work together in repairing cars for defendant? A. From six to eight months.

"10. Was Lovell, at the time of the injury, competent to discharge his duties as car repairer? A. He was not competent.

"11. If Lovell was incompetent at the time of the injury to plaintiff, what was the cause of that incompetence? A. Gross carelessness and habitual drunkenness.

"12. Was Lovell an habitual drunkard at the time of the injury to the plaintiff? A. He was.

"13. If Lovell was an habitual drunkard at the time of the injury, how long prior to such time had he been so? A. We cannot state the exact time.

"14. Did plaintiff ever inform the defendant that Lovell was an habitual drunkard? A. We don't know that he did.

"15. If plaintiff gave such information, to whom and when did he give it? A. ——.

"16. Did plaintiff before such injury know that Lovell was an habitual drunkard? A. He did not.

"17. If so, how long before such injury did plaintiff have such knowledge? A. ——.

"18. Did plaintiff have an opportunity to know before such injury that Lovell was an habitual drunkard? A. We think he did.

"19. Did plaintiff know at the time he was injured, that no flags had been set out to indicate that anyone was at work on the car on which plaintiff was at work at the time of the injury? A. He did.

"20. Did plaintiff object to working on such car because no flag was set out, as stated in question 19th? A. He did not.

"21. Was Lovell competent to discharge the duties of car repairer at the time he was employed as such by defendant? A. At the time he was first employed we think he was.

"22. Did the defendant, at the time of employing Lovell, fail to exercise due diligence to ascertain whether Lovell was competent to discharge the duties of car repairer? A. We have no knowledge of the fact.

"23. Was the defendant, at any time after the employment of Lovell, notified that said Lovell was incompetent to discharge the duties of car repairer? A. No.

"24. If defendant was ever notified that said Lovell was incompetent to discharge his duties as car repairer, when and by whom was such notice given? A. ——.

"25. By whose order was the car, which ran against and pushed the car over plaintiff's arm, moved on the track at the

time plaintiff was injured? A. By order of defendant's yard master.

"26. Had Harrington, as yard master at the time plaintiff was injured, the control of the movement of cars in defendant's yard? A. Yes.

"27. By whose order was the car, which was pushed over plaintiff's arm, set on the track and at the place where said plaintiff was injured? A. By order of the boss car repairer of defendant."

Afterward the defendant moved the court for judgment in its favor on the pleadings. This motion was overruled, the defendant excepting. Thereupon the defendant moved the court to set aside the general verdict rendered for plaintiff, and to enter a judgment for defendant upon the special findings of fact made by the jury. This motion was overruled, the defendant excepting. Thereupon the defendant filed its motion for a new trial, which motion, after due argument by counsel and consideration by the court, was overruled, the defendant excepting. It was then by the court considered and adjudged that the plaintiff have and recover of the defendant the said sum of $10,000, and costs herein. The defendant company brings the case here. Other facts appear in the opinion.

*B. F. Stringfellow*, for plaintiff in error.

*Tomlinson & Griffin*, and *Thos. P. Fenlon*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action to recover damages on account of certain personal injuries received by Fox, plaintiff below, while engaged in the service of the railroad company, by the alleged negligence of the company and its employes. The evidence in behalf of Fox tended to show that on March 3, 1883, Robert Lovell was the foreman, or boss car repairer, in the yards of the railroad company at St. Joseph, Mo.; that Harris Harrington was the yard master of the company, and had control of the movement of

cars at the same place; that Lovell had under his orders two day repairers and one night repairer; that Fox was one of the day repairers; that Fox and Edward Powers were ordered by Lovell to go under a car in the yards of the company in the said city of St. Joseph for the purpose of repairing the car; that they took with them the tools necessary to make the repairs; that while they were working under the car, other cars pushed this car along upon the track in such a manner as to cause the car to break and mangle the left arm of Fox; that Fox had nothing to do with the movement of the cars pushed against the car under which he was working; that he did not know and could not have known, in the situation he was working, that cars were being pushed against the car under which he was, until they struck the car; that no notice or warning from Lovell, or by signal bell or otherwise, was given to him of the approach of the cars; that it was not in his power to prevent the collision of the cars; that at the time, Robert Lovell, the foreman, was present, overseeing the work; that by the order of Lovell the car which was pushed over plaintiff's arm was set on the track at the place where it was being repaired; that four or five days after the injury, Lovell was discharged from the employ of the company; that the latter had frequently applied to the company for flags to designate cars that were to be repaired, but up to this time they had not been furnished; that at this time the only means that Harrington, the yard master, had of knowing the car repairers were at work upon a car, was by the foreman or boss repairer telling him when and where he was going to repair a car; that after the injury to Fox, signal flags were used to designate the cars that were being repaired.

It is claimed for the railroad company that the petition failed to state any cause of action; that the trial court erred in overruling the demurrer to the evidence of Fox; that the court erred in refusing to direct the jury to find for the railroad company; that the court erred in the instructions given and excepted to; and finally, that the court erred in refusing

to enter judgment for the company upon the special findings of fact returned by the jury.

The principal question in this case is, whether the railroad company was guilty of negligence toward Fox. The injury complained of occurred in the state of Missouri, and it is conceded that the common law as to the liability of master for injuries to servants is in force in that state.

The contention of the railroad company is, that the petition attempted to state a right of action based on an injury caused by the negligence of a fellow-servant; that all the acts of negligence charged or proved were purely and simply acts of negligence of a fellow-servant, for which, under the common law, the railroad company was not liable. In support of this, it is further contended that the foreman or boss car repairer was a fellow-servant with the subordinate employes under his control. We do not concur in this view. In *Railroad Co. v. Salmon*, 14 Kas. 524, in speaking of the officers, agents and servants of a railroad company empowered to furnish proper implements, machinery and materials for the employes to operate with in accomplishing their work, it was said that—

"These higher officers, agents or servants cannot with any degree of propriety be termed fellow-servants with the other employes, who do not possess any such extensive powers, and who have no choice but to obey such superior officers, agents, or servants. Such higher officers, agents or servants must be deemed in all cases, when they act within the scope of their authority, to act for their principal, in the place of their principal, and in fact to be the principal. We also think that it is the duty of a railroad company, with reference to both passengers and employés, to exercise reasonable care and diligence in making sufficient regulations for the safe running of trains, so as to avoid injury from collision or from any other source. . . . If an employe performs the duties of of one of the higher officers, agents or servants of which we have already spoken, the company is generally responsible for his negligence, whatever may be his grade."

One of the exceptions to the general rule of the common law, that the master is not liable to one employe for the neg-

ligence of a co-employe in the same service, arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. If it were otherwise, the master would be released from all obligation to make reparation to an employe in a subordinate position for any injury caused by the wrongful conduct of the persons placed over him, whether they were fellow-servants in the same common service, or not. In *Railroad Co. v. Holt,* 29 Kas. 152, it was said:

"The rule is, even under the common law, that a master employing servants upon any work, particularly a dangerous work, must use due and reasonable diligence that he does not induce them to work under the notion that they are working with proper and safe machinery, while employing defective and dangerous machinery; and if an employe is injured on that account, and without fault of his own, the master is liable in damages."

In *Railroad Co. v. Moore,* 29 Kas. 633, it was said:

"In all cases at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work. . . . And at common law, whenever the master delegates to any officer, servant, agent, or employe, high or low, the performance of any duty which really devolves upon the master himself, then such officer, servant, agent or employe stands in the place of the master and becomes a substitute for the master—a vice-principal—and the master is liable for his acts or his negligence."

In the late case of *Railroad Co. v. Moore,* ante, p. 197, it was decided that—

"At common law, a railroad company is liable to a brakeman for injuries caused by the negligence of the road master or foreman, whose duty it was, over a portion of the road, to direct repairs and keep it in safe condition."

These authorities and many others which might be cited, establish, we think, that it was the duty of the railroad company to make such provisions and regulations for the safety

of the subordinate employes under the control and direction of Lovell as would afford them reasonable protection from the dangers incident to the performance of their respective duties.    It was therefore the duty of the company to protect them from the dangers to which they were exposed from moving trains while engaged in the work of repairing cars. Without such protection they were, while at work, constantly in imminent danger.   If the company had furnished flags to designate the cars that were being repaired, and these had been placed in the center of the rails near the car under which Fox was working, they would undoubtedly have prevented the injury complained of; but the company furnished no flags.    It left everything concerning the work of repairing the cars, the control of the subordinate employes, and their protection while engaged in their work, to Lovell.    He was not only the foreman to direct the work of his subordinates, but he was the person above all others to provide that they had a reasonably safe place at which to work; and while he was present, overseeing their work, upon him devolved the duty of using ordinary care and diligence to prevent them from being injured, mangled or crushed by other trains or cars moving the one under which he had placed them.    It is immaterial, therefore, whether Lovell be called superintendent, middleman, boss repairer, or foreman.    The duty devolved upon him to direct his subordinates to work in a peculiarly dangerous place, where by the exercise of reasonable care they could not protect themselves from approaching trains of cars; and under such circumstances, the duty devolved upon him as the representative of the company, to protect his subordinates while at work from the switching of cars and the making up of trains on the same track.    He failed to perform his duty.    For his negligence in this respect the company is liable.    The latter cannot in this matter interpose between itself and Fox, who has been injured without fault on his part, the personal responsibility of Lovell, who in exercising the company's authority has violated the duty he owed, as well to Fox as to the company. (*Hough v. Rly.*

*Co.*, 100 U. S. 213, and cases there cited; *Rly. Co. v. Lavalley*, 36 Ohio St. 221.)

All the exceptions taken must be overruled. If the allegations in the petition were in any manner indefinite or uncertain, as alleged by counsel, application should have been made to compel the plaintiff below to make the petition definite and certain by amendment. (Code, § 119; *Insurance Co. v. Duffey*, 2 Kas. 347; *Meagher v. Morgan*, 3 id. 372; *Smith v. Burnes*, 8 id. 197; *Railroad Co. v. Comm'rs of Douglas Co.*, 18 id. 169.)

Under the circumstances, we do not regard the damages as excessive. (*Railway Co. v. Young*, 19 id. 488; *Railroad Co. v. Moore*, ante, p. 197.)

With the conclusions we have reached, it is unnecessary to comment upon the other questions presented. We are convinced that there is no error appearing upon the record to justify a reversal of the judgment. Therefore the judgment of the district court must be affirmed.

VALENTINE, J., concurring.