THE GOOD-EYE MINING COMPANY v. SARAH E ROBINSON, as *Administratrix*, etc.

No. 13,256. (73 Pac. 102.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Review of Refusal to Require Security for Costs.* The refusal of a trial court to require a plaintiff to give security for costs in lieu of a poverty affidavit filed with the petition, even if the ruling be erroneous, will not be reviewed here after a judgment has been rendered for the plaintiff which this court decides to affirm on the merits of the case. The deprivation of a legal right which results in no harm or prejudice to the complaining party will not justify a reversal of the judgment.

2. MASTER AND SERVANT—*Delegated Duty—Liability of Master.* It is the duty of a master to provide his servants with a reasonably safe place in which to work. When the master delegates this duty to an officer, agent, or employee, such person stands in the place of the master and becomes his substitute as vice-principal, and the master is liable for his negligence to the same extent as though he himself had been guilty of the negligence. The case of *A. T. & S. F. Rld. Co. v. Moore*, 29 Kan. 632, followed.

3. —— *Evidence Sufficient.* The evidence examined and held to be sufficient to sustain the judgment.

Error from Cherokee district court; A. H. SKID-MORE, judge. Opinion filed July 10, 1903. Affirmed.

*R. W. Blue*, and *Blue & Hamilton*, for plaintiff in error.

*Finch & Wheatley*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. :  This was an action brought by the administratrix of the estate of Martin L. Gordon to recover damages from the plaintiffs in error for his death, caused by the alleged wrongful and negligent acts of a superintendent of the company.

C. L. Rains and three others were partners, under the firm name of the Good-eye Mining Company, engaged in mining lead and zinc ore.  The deceased was in their employ.  While working in one of the drifts or chambers of the mine he was killed by a boulder which fell from the top or roof of the drift. John Gordon, a brother of the deceased, was superintendent of the mine.  It was shown that it was his custom, with the assistance of another person, to inspect the roof twice every day and to test its safety by prodding.  A witness named Everett, who testified for plaintiff below, was working near Gordon, the deceased, at the time of the accident.  In the afternoon of the day Gordon was killed the witness talked with the superintendent concerning the safety of the roof.  He called his attention to the condition of the particular place from which the boulder fell. The superintendent stated that he had tried it, or examined it, the day before and could not budge or feeze it.  The witness testified : "He says, 'Everett, I could not prod that down yesterday,' and he was a bigger man than I was, and I thought if he could not feeze it there was no use of my going up there and trying it, and so it was left there."  Again, the witness saw the superintendent go out of the mine a short time before Gordon was killed.  He said : "'Everett, I will go out; the gasoline has come; I will come down and we will inspect the roof again';

and when he got out the gasoline had not come and he went to fixing a tub, and while he was up there Martin was killed." John Gordon testified for the plaintiff below that he was superintendent of the ground, and that his duties were to take care of the mine, look it over, and to protect the men the best he knew how; that he directed them where to work, and had full charge and control of the ground and the men working in the mine; that he hired and discharged them. From a verdict and judgment against them, plaintiffs in error have come here by proceedings in error.

The plaintiff below filed with her petition a poverty affidavit in lieu of a cost bond, as allowed by sections 5067 and 5068, General Statutes of 1901. The plaintiffs in error, on a motion made by them to require plaintiff to give security for costs, showed that she had contracted to give her attorneys forty per cent. of the amount of any judgment which might be recovered. The motion was overruled. It is argued that the attorneys, having a beneficial interest in the case, should have been required to give security for the costs. This court is required by statute to disregard any error or defect in the proceedings which do not affect the substantial rights of the parties. (Gen. Stat. 1901, §4574.) In the present case the judgment was entered against the defendants below, which carried with it all costs of the action. As the judgment of the court below will be affirmed, the fact that no cost bond was required of the plaintiff, if the ruling was erroneous, becomes immaterial now, since plaintiffs in error have nowise suffered thereby. The deprivation of a legal right which subsequently results in no harm or prejudice to the complaining party will not justify a reversal of the judgment.

On the point raised, that the poverty affidavit was insufficient in not showing that the minor children of the deceased were unable to give security for costs, we approve the case of *Coal Co. v. Britton*, 3 Kan. App. 292, 45 Pac. 100, where the administrator was permitted to sue *in forma pauperis*, and to make the affidavit in his representative capacity.

It is contended by plaintiffs in error that the proof failed to show that they or their superintendent knew that the mine was in a dangerous condition. There is little ground for contention on this question. The testimony of Everett, above referred to, from which we have quoted, was sufficient to justify the jury in finding that the superintendent had notice of the defective condition of the roof, which was conveyed to him by the witness. At the time of Gordon's death the superintendent had left the dangerous place with the expressed intention of returning and making another inspection, which, if he had not postponed it, might have averted the accident.

Many cases are cited in the brief of counsel for plaintiffs in error in support of their contention that John H. Gordon, the superintendent of the mine, was a fellow servant of the deceased, and that there could be no recovery, under the fellow-servant rule of the common law applicable in such cases. Whatever may be said in the decisions of other states, the law is well settled in Kansas against the claim of counsel. In *A. T. & S. F. Rld. Co. v. Moore*, 29 Kan. 632, the second paragraph of the syllabus reads :

"In all cases, at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with

33—67 KAN.

with reasonably safe materials to work upon. . . . And at common law, whenever the master delegates to any officer, servant, agent, or employee, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employee stands in the place of the master, and becomes a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence."

It must be remembered that the superintendent, Gordon, did no work in the mine beyond that of overseeing the men and inspecting the walls to insure their safety. He had power to hire and discharge. It was the duty of the mine-owners to provide a safe place for their servants to work, and this duty was delegated to Gordon who represented the master for that purpose.

"Since the duty of providing his servants with a reasonably safe place in which to work is another of those absolute duties which are imposed by law upon every master, an employee who is charged with that duty is a vice-principal, for whose negligence in its discharge the master will be liable." (12 A. & E. Encycl. of L., 2d ed., 954; see, also, *H. & St. J. Rld. Co. v. Fox*, 31 Kan. 586, 3 Pac. 320.)

Several minor errors are alleged to have been committed by the trial court. We have considered them, but find nothing of a prejudicial character requiring a reversal of the judgment.

The judgment of the court below will be affirmed

All the Justices concurring.