THE COFFEYVILLE VITRIFIED BRICK AND TILE COM-
PANY v. S. H. SHANKS.

No. 13,610.    (76 Pac. 856.)

SYLLABUS BY THE COURT.

1. MINES AND MINING— *Operation of Shale-pit—Duty of Master
to Warn Servant.* It is a master's duty to conduct the business
of mining shale in a manner affording reasonable safety to his
employees; and if the operation of a shale-pit from thirty to
thirty-five feet deep, with steep walls, require that massive frag-
ments of shale, loosened by blasting, be thrown down at irregular
intervals from the top of the pit upon the place at the foot of the
wall, where men are required to work, whose duties prevent them
from properly protecting themselves against injury from the fall-
ing shale, it is the master's duty to make efficient and permanent
provision for warning signals to be given upon such occasions in
time for the men to retire beyond the reach of harm.

2. ———— *Servant May Rely on Warnings of Pit-boss.* Under
a rule governing the operation of a shale-pit, that men at the foot
of the pit wall shall shovel shale into cars while the pit-boss
watches that drillers at work at the top of the pit do not throw
fragments of loosened shale down upon them without previous
warning, a man shoveling shale is not obliged to observe the prog-
ress of the drillers' work, but may rely upon the warnings the
pit-boss is required to give.

3. ———— *Fellow Servants—Master Must Give Warning of
Danger.* In determining the question whether or not two em-
ployees are fellow servants, the fact that the negligent act of one
of them, which injures the other, violates a duty which the mas-
ter himself owes is controlling, irrespective of the rank or grade
of service between the employees, and notwithstanding the cir-
cumstance that they are engaged in a common employment di-
rected to a common end; and if, in the discharge of the master's
duty, a warning be necessary, it is not enough that he has pro-
vided a competent person to give it; the warning must be given.

4. PRACTICE, DISTRICT COURT— *Exceptions to Special Questions
to Jury.* A general exception to a refusal to submit to the jury
a number of special interrogatories is insufficient if any one of
them be improper.

Error from Neosho district court; L. STILLWELL,
judge.    Opinion filed May 7, 1904.    Affirmed.

*J. B. & W. E. Ziegler*, for plaintiff in error ; *H. P. Farrelly*, of counsel.

*W. R. Cline*, for defendant in error.

The opinion of the court was delivered by

BURCH, J. : At the time of the occurrence furnishing the foundation for this litigation the defendant was engaged in manufacturing brick out of shale quarried from a pit.   The shale-pit was then from 175 to 200 feet long, from 80 to 100 feet wide, and from 30 to 35 feet deep, with steep walls.   Men designated as "drillers" worked about the top of the pit, loosening the shale by blasting.   Fragments of shale loosened in this manner were pushed by the drillers away from the walls, when they tumbled to the bottom of the pit by virtue of their own gravity.   There they were broken up and shoveled into small cars by men described as "shovelers."   The loaded cars were drawn out of the pit by mechanical means.   All operations connected with the working of the shale-pit were superintended by an agent of the company known to the men as the "pit-boss."   He had authority to employ and discharge pit workmen, directed them where and how to work, and when to perform different kinds of work, fixed the location of the car-tracks in the pit, and in all respects exercised the company's authority over the pit and the men at work there.

It was safe for the shovelers to work at the foot of the pit wall unless the drillers should push shale down upon them unawares.   It was unavoidable that shale should be thrown down at irregular intervals.   If the shovelers were allowed to consume their time in scanning the top of the pit in an effort to protect themselves, they might not be successful in doing so, and their labor could not be profitable to the company.

Therefore, the pit-boss took upon himself the entire responsibility of protecting the shovelers by watching the progress of the drillers' work, and giving warning, whenever shale was to be thrown down, in time for the shovelers to retire beyond the reach of harm. The foreman assured the shovelers he would always do this, and instructed them to give all their attention to their work. This regulation was rigorously enforced, and any shoveler looking up to see if danger threatened was likely to be arrested with the command of the pit-boss: "Go ahead and shovel the shale, and I will watch that."

The plaintiff was an experienced shoveler, who was familiar with all the operations and dangers of the pit, who had received the foreman's promise of protection from danger, and who relied upon him for such protection. On the afternoon of March 7, 1902, a large block of shale, estimated to weigh 1500 pounds, was pushed down by the drillers without any warning from the pit-boss. After the descent had begun the drillers themselves called out to the men in the pit below, but it was then too late. The mass of rock overtook the plaintiff before he could escape, and crushed the lower part of his left limb. He knew the drillers were at work above him, and could have seen what they were doing by neglecting his own duty, but not otherwise. This he did not do. Instead, he faithfully followed his instructions, remained ignorant of his peril, and suffered the grievous consequence. From a judgment entered upon the verdict of a jury in favor of the plaintiff the defendant prosecutes error.

The company claims that the shoveler assumed the risk of injury from the source from which it came to him, and all the arguments which are usually elabo-

rated from "open and obvious danger," "equal facility and opportunity to see and know," "shutting the eyes to the patent and palpable," and kindred material, are rehearsed.   They have no place here. There is no room for any implied agreement of the employee to assume the risk of danger in the presence of an express regulation upon the subject established by the pit-boss for the very purpose of protecting him.   The pit-boss undertook to perform the function of the vigilant eye and ear and the cautious judgment for his men, in consideration of which they surrendered the use of their own faculties and yielded the right of relying upon their own capabilities for protection.    The risk of danger from the spontaneous caving of banks, from the falling of blocks of shale loosened by natural agencies, and from other similar causes, was doubtless assumed.   Such perils inhered in the work and could be foreseen by the men as well as by the master.   But the conduct of the work of drilling and casting down shale was properly subject to regulation, and under the rule of the pit that he should work while the foreman watched, the plaintiff was not bound to observe anything connected with the operations of the drillers except the warnings which the pit-boss gave.

Some authorities are cited, however, to show that the pit-boss was a mere fellow servant with the men who shoveled shale.   If so, the plaintiff assumed the risk of the negligence of the pit-boss, and the company is not liable.   In some cases it may be said that if the conduct of an enterprise involve the giving of monitory signals in passing progressively from detail to detail of the work, and the person set to give the signal be carefully chosen, the company will not be bound if he fail in his duty.   An injured workman

and the person employed to give the signal may then be said to be engaged in the discharge of duties so intimately related and so combinedly directed to a common end that the one must be on his guard with reference to the conduct of the other; the warning becomes a part of the service itself—which is something entirely distinct and separate from· the things the master must do to make the service and the place in which it is performed reasonably safe. But whenever a negligent act violates any duty which the master himself owes to the servant, as, for example, the duty to make the service and the place in which it is performed reasonably safe, that fact controls, irrespective of the rank or grade of service between employees, and notwithstanding the circumstance that they are engaged in a common employment directed to a common end; and if, in the discharge of the master's duty, a warning be necessary, it is not enough for him to say that he has provided a competent person to give it; the warning must be given.

In this case it was the master's duty to work the shale-pit in a manner affording reasonable safety to the men at the foot of the wall. The drillers were required to throw down masses of shale upon the very place where the men below were obliged to work. To render it safe for this to be done it was indispensable that a warning be given in time for the men below to retire. With a warning the place was safe enough; without a warning it was hazardous in the extreme. The danger was inevitable, as long as men blasted down the banks of the pit; and without such blasting the company would fail of material for making brick. The shovelers were hired to work—not to dodge the drillers. It was impossible for them to protect themselves. The nature of the work and

the character of the place imperatively demanded that efficient and permanent provision be made for warning. signals. Therefore, the adoption of a rule upon the subject and the designation of a person, however capable he might be, for the execution of that function did not measure up to the full height of the master's responsibility. Unless the pit-boss gave the necessary warning the master's duty was not fulfilled.

The principle involved in this case is not distinguishable from that applied in the case of *H. & St. J. Rld. Co. v. Fox*, 31 Kan. 586, 3 Pac. 320, in which it was held that it was the duty of a foreman or boss car-repairer, as the representative of a railway company, to see that reasonable precautions were taken to protect and guard subordinate car-repairers, while engaged in the discharge of their duties under a car where he had placed them, against danger arising from the switching of cars and the making up of trains on the same track. (See, also, *Mining Co. v. Robinson*, 67 Kan. 510, 73 Pac. 102; *Gerrish v. New Haven Ice Co.*, 63 Conn. 9, 27 Atl. 235; *Belleville Stone Co. v. Mooney*, 60 N. J. L. 323, 38 Atl. 835, 39 L. R. A. 834, s. c., 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834; *Andreson v. Ogden Ry. and Depot Co.*, 8 Utah, 128, 30 Pac. 305; *Erickson v. St. Paul & Duluth R. Co.*, 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786.)

The defendant also assigns error with respect to several minor matters. The plaintiff was allowed to state, over objection, that his family consisted of a wife and child, and it is not permissible in personal-injury cases to augment damages by proof of sentimental facts of this character. (*Railroad Co. v. Eagan*, 64 Kan. 421, 67 Pac. 887; *Kansas Pacific Rly. Co. v. Pointer*, 9 id. 620.) The evidence was offered, how-

ever, to explain the necessity for plaintiff's early return to work, as against a possible inference that he had not been seriously injured. The defendant, however, made no objection to proof of the fact that plaintiff was a man with a family, and the defendant itself developed the fact that plaintiff had a wife. The error, therefore, must be treated as one without prejudice.

The defendant asked the court to submit to the jury forty-five special questions. The court struck out seventeen of them and submitted the others. It is now insisted that five of the questions stricken out should have been answered. Three of these questions were wholly immaterial under the instructions given to the jury and the foregoing conclusions respecting the law of the case, and the other two violated the rule of *Foster v. Turner*, 31 Kan. 58, 1 Pac. 145, and *Mo. Pac. Rly. Co. v. Reynolds*, 31 id. 132, 1 Pac. 150, that the jury should be required to answer particular questions of fact only and not to elaborate details of fact under general questions. But the assignment of error concerning this matter is not founded upon an appropriate exception. It is beyond controversy that many of the rejected questions were improper. A general exception to the refusal to give the rejected list was taken. This was not sufficient. Each special interrogatory submitted to the jury must be so framed as to present distinctly a single material fact involved in the issues of the case. (*Railroad Co. v. Aderhold*, 58 Kan. 293, 49 Pac. 83.) A request for the submission of a number of questions is analogous to a request for the giving of several instructions, each of which must contain a separate and independent proposition of law, and a general exception to a refusal to give a number of them

is unavailable. unless all of them be proper. (*Sumner v. Blair*, 9 Kan. 521; *Bailey v. Dodge*, 28 id. 72; *The State v. Wilgus*, 32 id. 126, 4 Pac. 218.) All the reasons for this rule apply to the submission of particular questions of fact. A defeated party cannot be permitted to search through an array of proposed questions or instructions discovered to be in the record until he finds one or two sufficient to pass muster, and then to attach them to a general exception, and thereby secure the reversal of a judgment upon a point which the district court has had no reasonable opportunity to consider and decide.

Finally, it is said that, under authority of *S. K. Rly. Co. v. Moore*, 49 Kan. 616, 31 Pac. 138, judgment should have been given for the defendant upon the following question and answer :

"Ques. Were any of the employees of the defendant guilty of negligence which contributed to, or was the proximate cause of, the injury to the plaintiff? Ans. No, but the defendant was."

The jury, however, were instructed specially concerning the representative relation of the foreman to the company, and his identification with the company, so far as his duty to employees was concerned. The answer of the jury, therefore, merely discriminated between that official who stood for the company and the ordinary workmen about the pit.

Since the record is free from material error the judgment of the district court is affirmed.

All the Justices concurring.