E. J. CRIST v. THE WICHITA GAS, ELECTRIC LIGHT AND POWER COMPANY.

No. 14,111.   (83 Pac. 199.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Contributory Negligence—Question for the Jury.* Where, in a personal-injury action, contributory negligence becomes material, and its existence depends upon a conclusion of fact as to which of two courses of action the plaintiff in the exercise of ordinary care for his own protection should have pursued, and the evidence is such that different minds might differ as to the proper conclusion, the question is for the jury and not for the court.

2. ——— *Demurrer to Evidence.* In such a case, if the existence of such negligence determines the plaintiff's right of action, it is error to sustain a demurrer to his evidence.

3. MASTER AND SERVANT—*Fellow Servant—Vice-principal.* A foreman under whom workmen are employed is a fellow

servant with the workmen when engaged with them in accomplishing the common task or object, but when discharging or assuming to discharge the duties toward the workmen which the law imposes on the principal he is a vice-principal.

Error from Sedgwick district court; DAVID M. DALE, judge. Opinion filed November 11, 1905. Reversed.

### STATEMENT.

THE plaintiff in error brought this action in the district court of Sedgwick county to recover damages for personal injuries alleged to have been received through the negligence of the defendant, its superintendent and foreman, while he, under the direction of the alleged foreman, was cutting a broken wire from a pole on defendant's light line.

A jury was impaneled to try the case and the plaintiff introduced his evidence, upon the conclusion of which the defendant filed a demurrer thereto. The demurrer was sustained and judgment rendered against the plaintiff. To reverse this ruling and judgment plaintiff brings the case here.

*Adams & Adams*, for plaintiff in error.

*Houston & Brooks*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The plaintiff makes nine assignments of error which may be fully stated in one—that the court erred in sustaining the demurrer to plaintiff's evidence. If this ruling was not erroneous the denial of the motion for a new trial and the judgment against the plaintiff were right. So we have only to consider the one question, Was the demurrer properly sustained?

The negligence alleged was: (1) In maintaining a rotten pole which absorbed water and thus became a good conductor of electricity; (2) the failure to shut off the electric current before the plaintiff was directed, and attempted, to cut the wire. The defenses

Crist v. Light Co.

alleged were: (1) That the injury occurred through the contributory negligence of the plaintiff; (2) if from any other cause, through the contributory negligence of a fellow servant.

It was admitted that the defendant's light plant was in charge of one Ward, as superintendent. There was evidence that he was also the engineer at the power-house and employed the men; that plaintiff had worked for defendant some years before Ward became superintendent, but was not so employed at the time Ward assumed his position; that Ward reemployed plaintiff, and was informed by the latter that he "did not work among the wires when the current was on;" that some time after plaintiff commenced work under Ward's supervision the latter said to plaintiff: "Mr. Evans is here from Fort Worth. He is the foreman of your line. You will look to him for your orders and instructions from now on." The evidence further showed that from this time Evans and the plaintiff, and sometimes a third man, did the line work; that on the day of the accident the plaintiff and Evans were called, by a signal, from their work to the power-house, and were informed by Ward that a wire was down a short distance away; that they drove immediately to the point indicated, saw a loose wire, and got out of the conveyance; that plaintiff proceeded to put on his "climbers" and requested Evans to telephone to the power-house to have the current turned off; that plaintiff climbed the pole a little distance and, sitting on a mail-box attached thereto, awaited the return of Evans; that a crowd of people had assembled; that Evans soon reappeared and called to the plaintiff: "All right; go ahead."

It was also shown that the plaintiff, without stopping to investigate or to observe the condition of the wire, as to whether it was "alive" or "dead," immediately ascended the pole, with his back to the wire, grappled it with his pliers to cut it loose from the pole, and instantly received a great shock of electricity; that

he was thus rendered unable to release his hold on the wire and was severely burned—was hung there till the current was shut off; that there was 1000 voltage on the circuit, and that 800 voltage will kill. The evidence also showed that it was very dangerous to attempt to cut a wire under the circumstances shown. There was some evidence that the plaintiff, by looking, could have told that the wire was alive at the time he started to climb from the mail-box; but it was shown to depend upon whether the end of the wire was in a wet or dry place—which was not proved— and whether or not people stood between him and the end of the wire.

It is contended that the evidence of plaintiff unquestionably showed, as a question of fact, that the plaintiff was guilty of contributory negligence—that it required no weighing of the evidence to come to this conclusion; or, the facts being admitted as shown by the evidence most strongly in favor of the plaintiff, that, as a proposition of law, there was contributory negligence on the part of plaintiff. We hold that neither of these positions is tenable.

"Whether negligence in a particular case is shown is ordinarily a question for the jury; but when the facts are undisputed, or are definitely found by the jury, and only one conclusion can be drawn therefrom, it becomes a question for the court." (*U. P. Rly. Co. v. Lipprand*, 5 Kan. App. 484, 47 Pac. 625.)

(See, also, *Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101.)

By the demurrer the evidence of plaintiff is admitted as true, but it does not follow that only one conclusion can be drawn therefrom. It still remains to determine, from all the facts and circumstances disclosed by this evidence, whether the plaintiff, in the exercise of ordinary care for his own safety, was bound to determine for himself if the current was cut off or whether he had a right to assume this when his foreman shouted to him: "All right; go ahead." Different

minds might form different conclusions as to what this evidence proves, as opposing counsel have well illustrated in their briefs. The conclusion is for the jury, not for the court.

Again, it is urged that the evidence showed Evans to have been a fellow servant, and, if his negligence was the proximate cause of the injury, the plaintiff is not responsible. We cannot agree with this contention. On the contrary, we think the evidence, viewed in its most favorable light to the plaintiff, showed Evans to have been acting as a vice-principal when he shouted to plaintiff: "All right; go ahead." The rule requiring a master to furnish his servant a reasonably safe place to work has no iron-bound limitations as to whether the place be a permanent or a temporary one. If the master sends a servant to work in a place of danger, however temporary, and the danger arises from acts or omissions of other servants against which the servant has no means of protecting himself, it is the duty of the master to provide such warnings or to take such other steps as may be reasonably necessary to safeguard the servant so employed; and if another servant of higher or lower degree is delegated by the master to attend to such safeguarding he is performing the functions of the master, and if guilty of negligence the master is responsible. (*Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856.)

In this case Ward, who was a vice-principal in conducting the entire business of the defendant in running the plant, sent Evans, the foreman of the line, and the plaintiff, a lineman, to repair a broken wire which Ward knew, or in the exercise of reasonable care should have known, was a "live" wire. Ward was also bound to know that it was very dangerous to adjust a live wire, and that the safety of the lineman required the shutting off of the current. The plaintiff exercised the usual means to have the current shut off, which probably should have been done without suggestion from him. The foreman, aiding in the per-

formance of the duty of the master, in effect told plaintiff that the current had been cut off and ordered him to go ahead. If, as the jury had a right to find, the plaintiff was justified in relying on this assurance without investigating the truthfulness of it, then the proximate cause of the injury was the negligence of Ward or Evans, or both, as vice-principals.

We are not assuming that a foreman is necessarily a vice-principal as to the men employed under him. He is a fellow servant when laboring to accomplish the common object or purpose of the laborers. He is a vice-principal when performing the duties, or aiding in performing the duties, which by law devolve upon the master. (*Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856; *H. & St. J. Rld. Co. v. Fox,* 31 Kan. 586, 3 Pac. 320; *Mining Co. v. Robinson,* 67 Kan. 510, 73 Pac. 102; *Bridge Co. v. Miller,* 71 Kan. 13, 80 Pac. 18.)

The judgment of the court below is reversed and the case is remanded, with instructions to grant a new trial.

All the Justices concurring.