No. 19,362.

EDWARD S. STOCKS, *Appellee,* v. THE LEAVENWORTH TERMINAL RAILWAY & BRIDGE COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. EMPLOYEE—*Injured While Operating Drawbridge—Negligence of Superintendent—Failure to Give Warning—Superintendent and Employee Not Fellow Servants—Liability of Bridge Company.* An employee of a bridge company was engaged, with others, in turning the span of a drawbridge by pushing on levers inserted in the keys of the pivot machinery in compliance with the orders and signals given by the superintendent of the company. The view of the men who were pushing on the levers was partially obstructed, and while at work they could not observe the relative positions of the passing boat and drawspan of the bridge. The superintendent directed the men to open the bridge for the passage of a boat, and before it had passed through ordered them to reverse and close the bridge. The boat, not having cleared the opening, was turned by the wind and began to drift towards the bridge, when the superintendent ordered the

opening to be widened, but before the order could be carried out the boat struck the drawspan, causing the keys to revolve rapidly and one of the levers to strike and injure the plaintiff. The superintendent observed that the boat was drifting towards the drawspan and realized that it would strike the span, but gave the men at the levers no warning of the peril, although he had sufficient time to have done so and thus have prevented the accident and safeguarded the men. In an action to recover for the injury sustained by plaintiff it is held that the superintendent and the plaintiff were not fellow servants, and that the failure of the superintendent to give a warning to the plaintiff violated a duty which the bridge company owed to the plaintiff.

2. SAME—*Verdict—Does Not Indicate Passion or Prejudice.* Under the evidence it is held that an award of $6000 to the plaintiff can not be deemed to be so excessive as to indicate passion and prejudice on the part of the jury.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 6, 1915. Affirmed.

*W. W. Hooper,* of Leavenworth, and *John Barton Payne,* of Chicago, Ill., for the appellant.

*Lee Bond,* and *M. N. McNaughton,* both of Leavenworth, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action begun by Edward S. Stocks against the Leavenworth Terminal Railway & Bridge Company to recover damages for personal injuries sustained by him while in the company's employ. The defendant owns and operates a bridge across the Missouri river at Leavenworth. There is a draw section in the bridge near the Kansas side, and this span is opened by turning upon a so-called pivot. To turn the bridge keys are inserted in the machinery of the pivot and into these keys are inserted levers from eleven to twelve feet long, made of timber, and which are about six inches square at the center, tapering to about four inches square at the ends. In opening or

closing the bridge these levers are pushed around by men until the draw section has come to the desired position. On November 30, 1913, a steamboat pushing a barge of stone signaled to the superintendent of the defendant in charge of the bridge that it desired to pass through the bridge. The superintendent ordered workmen, among them the plaintiff, out upon the bridge to operate the draw, and the bridge was opened to an angle of about forty-five degrees when, it appears, the superintendent, from a place on the west and Kansas side of the river, ordered that the bridge be closed. The steamboat and barge, it appears, had not cleared the opening, but were turned by the wind and began to drift towards the bridge. The possibility of their striking the bridge became apparent to the superintendent, and he ordered that the opening be widened. The men reversed their positions and began pushing the levers in the opposite direction, but before they could comply with this order the steamboat struck the bridge, causing the keys to revolve rapidly, carrying the levers with them, one of which struck the plaintiff in the back, causing the injury of which he complains. Defendant, in its answer, denied generally the allegations in plaintiff's petition, and further alleged that plaintiff was guilty of contributory negligence. On the trial of the case evidence was offered tending to show that the proper position of the bridge when open was at an angle of ninety degrees from its position when closed, and that had it been opened to this angle on this occasion the accident would not have happened. Evidence was also given tending to show that the superintendent usually stationed himself upon the draw section when directing the opening and closing of the bridge, and there was testimony, further, that plaintiff and those working with him could not observe the relative positions of the bridge and the steamboat while engaged in the work, although it did appear that plaintiff had assisted in opening and closing the bridge many times before.

Stocks v. Bridge Co.

Defendant's demurrer to plaintiff's evidence on the grounds that defendant was engaged in interstate commerce and that plaintiff had failed to prove facts sufficient to constitute a cause of action was overruled. The jury returned a general verdict in favor of plaintiff and also made special findings of fact. Overruling defendant's motions for judgment on the special findings and for a new trial, the court gave judgment against the bridge company, and it appeals.

Error is alleged in the court's overruling of defendant's demurrer and in the refusal of the court to direct a verdict in its favor, and complaint is also made as to certain instructions and rulings as to the admission of evidence. However, the principal contention of defendant appears to be that plaintiff was injured by the negligence, if any, of his coworkers, and it is not, therefore, under the fellow-servant doctrine, liable in damages for the injury.

The contention of the defendant can not be sustained. Oursler was the superintendent of the company, and he had controlled and operated its business for about eighteen years. To him the company had committed not only the control and management of the bridge business, but also the control of the men opening and closing the bridge. He had been entrusted with authority to employ and discharge the men; but what is of greater consequence, so far as the legal question involved is concerned, is that the duty was devolved on him to give orders and warnings so as to safeguard the men while they were at work. In this respect he was performing the absolute duty of the master, and as to the men turning the levers he stood in the place of the master. It was the duty of the master to make the service and the place where the men were working reasonably safe. That was a continuing duty, and the responsibility for its nonperformance can not be escaped by the company because the duty had been delegated to another, not even where such other may be regarded as in the same grade or rank of service as the

injured persons. (*A. T. & S. F. Rld. Co. v. Moore,* 29 Kan. 632; *H. & St. J. Rld. Co. v. Fox,* 31 Kan. 586, 3 Pac. 320; *Mining Co. v. Robinson,* 67 Kan. 510, 73 Pac. 102; *Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856; *Crist v. Light Co.,* 72 Kan. 135, 83 Pac. 199; *Barnett v. Cement Co.,* 91 Kan. 719, 139 Pac. 484.)

It appears that the superintendent took a position on the west bank of the river, and from that point he gave the orders and signals to the men who were pushing on the levers. It was incumbent on the superintendent not only to give signals and directions for the opening and closing of the bridge, but it also devolved on him to warn the men of the perils which finally overtook them and caused injury to the plaintiff. This was the master's duty, and he was acting for the master. He was in a position to see that the boat and barge had not safely passed through the opening, that those in charge of them had lost control and that they were drifting against the bridge. With their heads down the men were going around and around, pushing on the levers in the work of opening and closing the bridge in compliance with the orders of the superintendent. Each side of the bridge where they were at work had a latticed railing which was about five feet high and which obstructed their view, but, under the circumstances, they would naturally rely on the superintendent to observe the progress of the boat and barge and to give them such signals and warnings as the progress of the work and the safety of the men demanded. When the pilot of the boat saw that it was going to strike the bridge he jumped from the pilot house, and this movement was seen by the superintendent. He saw the pilot leaving the pilot house about a minute before the boat struck the bridge, and he admits that he was then aware that the boat would collide with the bridge, but, although he had this knowledge, he gave no warning to the men working on the levers. It was his duty to give warning of the impending collision to the men, and there is testimony to the effect that if it had been given

the accident and injuries might have been avoided. In
*Brick Co. v. Shanks,* supra, it was held that:

"In determining the question whether or not two
employees are fellow servants, the fact that the negli-
gent act of one of them, which injures the other, vio-
lates a duty which the master himself owes is con-
trolling, irrespective of the rank or grade of service
between the employees, and notwithstanding the cir-
cumstance that they are engaged in a common employ-
ment directed to a common end; and if, in the dis-
charge of the master's duty, a warning be necessary,
it is not enough that he has provided a competent per-
son to give it; the warning must be given." (Syl. ¶ 3.)

The defendant insists that *Bridge Co. v. Miller,*
71 Kan. 13, 80 Pac. 18, 1 L. R. A., n. s., 682, supports
its theory that the superintendent and the plaintiff
were fellow servants, and that the defendant was
therefore not liable for the superintendent's negligence.
In that case it is pointed out that rank and grade of
service between employees is not controlling and, fur-
ther, that it is not material that employees of the same
master are assigned to different departments of the
same general enterprise, and that an employee engaged
in the same general business is not to be regarded as
the vice principal merely because he is in another rank
or grade than other employees, or is assigned to a dif-
ferent branch or department of the service. It is ex-
pressly stated, however, that as to any duty owed by
the master to his servants he is liable for breaches of
such duties without regard to the duties or the rank
or department of the servant to whom the duties have
been delegated.

We find nothing substantial in the objections to the
rulings of the court in charging the jury. The issues
in the case were fairly presented in the instructions
given.

Complaint is made of the ruling denying defendant's
motion for judgment on the special findings, and it is
insisted that one answer returned by the jury is incon-

sistent with the general verdict. One of the questions asked by the defendant was: "Is the defendant maintaining a pivot drawbridge across the Missouri river and maintaining and operating terminal facilities in Kansas and Missouri?" The answer was, "No." The question should not have been submitted in that form, as a number of distinct questions were included in it. To have answered, "Yes," would have been an affirmative answer of all of the questions embraced in the interrogatory, and since the answer could not be in the affirmative, the jury concluded that a negative answer should be given. That the defendant was maintaining the bridge was not in dispute, but it appears that a railroad company was operating a railroad over and at the terminals of the bridge. The superintendent testified that the defendant owned the bridge, rails, right of way and buildings, but that the railroad company owned the engines and cars, and was operating the railroad. It is clear, therefore, that the negative answer only means that the defendant was not doing all of the things grouped together in the question asked.

It is contended that the award of $6000 as damages is excessive. The plaintiff was forty-eight years of age at the time of his injury, and his family consisted of a wife and two daughters who were respectively twelve and thirteen years of age. For a number of years he had been employed in veneering and finishing furniture, and he was said to be a good enameler and finisher. For a time he was in the soldiers' home, where he did jobs of painting for which he was paid $12 to $15 a month. For about three months he had been employed by the defendant at the bridge. One of the physicians who examined plaintiff said that the injury to his back was severe, that it disabled him from any labor where he would have to use his back, that there might be some improvement in his condition in the future, but that he would never be able to use the

muscles of his back as he had before.    Another physician gave substantially the same evidence as to his condition, and while he thought the plaintiff might become much better in the future than at that time, an entire recovery he regarded to be questionable.    The plaintiff suffered very much pain for a period of two months after the accident, and passed bloody urine, indicating, as one of the witnesses, said, that a kidney had been injured.    A nurse testified that while she attended the plaintiff he suffered terrible pain, and that she administered opiates to him.    On the whole testimony we can not say that the award is out of reason or that it indicates that the jury in making it was actuated by passion or prejudice.

The judgment is affirmed.