James Higgins v. The Atchison, Topeka & Santa Fe Railway Company.

No. 13,967.    (79 Pac. 679.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Employee—Company Held Not Liable.* In making up a freight-train in the night-time, the conductor, who had business elsewhere, gave the switch list to the rear brakeman, who, in cooperation with the head brakeman, proceeded to select certain cars in the yard and put them into the train. The rear brakeman took the lead in the switching operations, in selecting cars, and giving signals, and in this connection it was his duty to cut off cars and adjust switches, while it was the duty of the head brakeman to ride the cars when kicked or moved, and to set the brakes and stop the cars at the proper places.. A car was switched in upon a track, and the rear brakeman, who was near the switch when the car was kicked, said to the head brakeman, "Let her roll," meaning that it was not necessary to ride or stop it. The head brakeman also thought it was unnecessary. It rolled passed the switch, but not far enough so that a man riding on the side of another car on the adjacent track could safely pass. When the second car was kicked down on the adjacent track, the rear brakeman ordered the head brakeman to ride it, and while doing so he collided with the first car, was knocked down, and injured. The rear brakeman was close enough to the misplaced car to see the danger, and the head brakeman was not, but if he had accompanied the car he could have seen that it was not "in the clear," and observed the danger of passing it. In an action to recover for the injury, it is *held,* that the two employees were fellow brakemen, each with his own duties to perform; that the rear brakeman did not represent the company, nor stand in such relation as to make him the superior of the head brakeman; that, under the testimony of the plaintiff, the injury was due to his own neglect of duty, and that the demurrer to his evidence was properly sustained.

Error from Lyon district court; Dennis Madden, judge. Opinion filed February 11, 1905. Affirmed.

*Kellogg & Madden,* for plaintiff in error.

*A. A. Hurd,* and *O. J. Wood,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. :  James Higgins brought this action against the Atchison, Topeka & Santa Fe Railway Company to recover damages alleged to have been sustained through the negligence of the company.   At the first trial he secured a verdict of $25,-000, but the court, deeming the award to be excessive, set the verdict aside and granted a new trial.   At the second trial, and at the close of the evidence presented on behalf of plaintiff, the court sustained a demurrer to the same, and gave judgment for defendant.

Higgins was employed by the company as a brakeman and had been in its service two months prior to the time he was hurt.   On the night of September 18, 1901, a freight-train ran into Florence, manned by a crew composed of an engineer, a fireman, a conductor, a rear brakeman, named Herrod, and Higgins, who was acting as head-brakeman.   Several cars were to be picked up there and put into the train.   The conductor, having business at the office, turned the switch list over to the rear brakeman, from which he selected the cars to be taken, and with the help of Higgins he proceeded to make up the train.   Two cars were selected, and in order properly to place them in the train it became necessary to put them on different tracks.   Herrod cut one car loose and signaled the engineer to kick it in on track No. 2.   When the kick was given and Higgins was about to mount the car for the purpose of stopping it at the proper place, Herrod said, "Let her roll," and in obedience to this direction Higgins did not accompany the car. It was pushed down on track No. 2, but its momentum was not sufficient to carry it far enough to let the next car pass safely in on track No. 3.   Herrod then cut off the second car, went down and opened

the switch for track No. 3, and directed that the car should be kicked in on that track. When the kick was made, he in effect directed Higgins to climb up on the car and "spot it"—that is, to ride it down and set the brake when it reached the proper place on track No. 3. The expression he used was, "There it is; catch it." Following the direction Higgins started to climb the moving car, but before he reached the top he was struck by the car on track No. 2, knocked down, and the backing engine ran over him, cutting off both of his legs. The car on track No. 2 was not "in the clear"—that is, it was not pushed far enough down to allow the other car with a man climbing up the side thereof to pass safely in on track No. 3. Herrod was at the switch, near the misplaced car; Higgins was about seventy feet away when it stopped, and the same distance away when the other car which he attempted to ride was kicked down—too far to be able to see that the first car was not "in the. clear." The night was dark and each of the men carried a lantern.

The negligence relied on for a recovery was the failure of Herrod, who was in charge of the switching operations, to see that the car on track No. 2 was "in the clear" before the other car, which Higgins was directed to climb, was kicked down. No negligence was attributed to the engineer or other employees.

The theory of the plaintiff is that, in the absence of the conductor, Herrod was in charge of the work. He selected the cars to be moved and gave the signals to the engineer. He gave directions to Higgins, who obeyed them, which was his duty. When the car was kicked in on track No. 2, Higgins was told to "let her roll," which meant that he was not to ride or accompany it to the stopping-place. Herrod not

only gave this direction, but he was at the switch, near the place where the car stopped, and where he could and should have seen that it was not "in the clear," while Higgins was seventy feet away, where he could not see the danger, and trusted to Herrod to give warning of any dangers that might exist where he stood.

The railway company contends, and the court below held, that Herrod was not the superior of Higgins; was not vested with such authority and control as to require Higgins to obey orders; and that any orders given by Herrod did not change their relations, nor excuse Higgins from performing the duties of his position.

Was the court justified in taking the case from the jury? Was there testimony tending to show negligence on the part of Herrod for which the railway company was liable? Of course, if there was testimony fairly tending to show negligence and liability, the case should have been submitted to the jury, but the court is of the opinion that the plaintiff's own testimony was such as to preclude a recovery. Herrod did not represent the company in such a way as to make him the superior of Higgins. They were fellow brakemen, and each had his own duties and tasks to perform. While Herrod had the switch list, made selection of cars, gave signals, and to that extent took the lead, there were certain duties required of Higgins which belonged to him exclusively, without regard to any rule of superiority. Herrod's duty was to cut off cars and adjust switches, while Higgins was the field man, whose duty was to ride the switched cars and set the brakes, or, in the language of the road, "to spot them." If he had ridden the car which was kicked down on track No. 2, as he should have done, he would have seen that it was not "in the

52—70 KAN.

clear," and have known that the other car which he undertook to ride could not safely pass. In his testimony Higgins stated that he was required to ride all cars that needed riding; that he was to exercise his judgment in determining whether it was necessary to ride a switched car, and that he did not ride the car in question because he thought it unnecessary to do so. There was, in fact, no necessity of setting the brakes to stop the car. It would have rolled no further if he had ridden it. The trouble was that it did not run far enough, and that there was not room enough for a car to pass on the next track. It is true that Herrod told him to "let her roll," but that did not relieve him from the performance of his own duty, nor was it an assumption of such duty by Herrod. It was no more than an expression of opinion that the car would not roll too far, and it appears from the testimony that it was an opinion which Higgins shared.

A different question would be presented if the car had been kicked too hard and was going too far and injury had resulted from the failure to stop it. In such case it might possibly be said that the order to Herrod to "let her roll" prevented Higgins from stopping it at the right place. It was his duty rather than Herrod's to see that the cars were stopped at the proper places. It is not shown that Herrod observed that the car was not "in the clear;" but even if he should have seen that it did not reach a safe place, it was no less the duty of Higgins, who was fielding the cars, to observe the location of the car and the peril of passing it. The injury which was suffered, therefore, appears to have been due to his own neglect.

The trial court based its rulings in part on the ground that the negligence of Herrod, if he was negligent, was not the proximate cause of the injury; that the injury was in fact caused by the coming of the en-

gine which ran over plaintiff, and that, as this was an independent, intervening agency — not the one charged in the petition, no recovery could be had.   The court is unable to approve of this view, but holding that the injury resulted from plaintiff's own want of care rather than that of the railway company, the ruling must be sustained.

The judgment is affirmed.

WILLIAM R. SMITH, CUNNINGHAM, GREENE, BURCH, MASON, JJ., concurring.

JOHNSTON, C. J. (dissenting) : In the foregoing opinion I have attempted to state the views of the majority of the court, but I am unable to concur in the conclusions reached.   If the testimony of the plaintiff, whether weak or strong, tended to support his cause of action it should have been submitted to the jury.   Upon the demurrer every part of his evidence which tended to establish his case should have been taken as true, and every reasonable inference should have been allowed in his favor, and if, when viewed in the light most favorable to plaintiff, it fairly tended to sustain his theory, the court was without authority to take the case from the jury.   ( *Christie v. Barnes*, 33 Kan. 317, 6 Pac. 599 ; *Rogers v. Hodgson*, 46 id. 276, 26 Pac. 732 ; *Beaver v. A. T. & S. F. Rld. Co.*, 56 id. 514, 43 Pac. 1136.)   The testimony of plaintiff, as I read it, puts Herrod in the place of the conductor and in control of the switching operations in making up the train.   The order to "let her roll" meant that Higgins should not come down with the car, and I think he was justified in obeying the order. It is true he stated that in his judgment it was not necessary for him to ride the car for the purpose of stopping it, and it was not.   He was only required to do that when it was necessary to set the brakes to

keep the cars from running too far. Both of the brakemen were right in thinking that the car would not run too far. It did not run far enough, and when it stopped short of safety. Herrod was within reach and could have seen that it was not "in the clear," and that Higgins could not safely ride the other car past it. Higgins was seventy feet away, where he could not see the danger. He was out of sight of the misplaced car because of Herrod's order.

Whose duty was it to see that the car was "in the clear"? That was the turning-point in the case. It did not depend upon whose duty it was to stop the car by the setting of brakes. Higgins stated that it was his duty to field the cars when they needed fielding, but he also testified that it was the duty of the one nearest a car to see that it was "in the clear." Herrod was nearest to the obstructing car, and where he could and should have seen that it was not "in the clear." According to this testimony, then, the duty to observe rested on Herrod, and when he directed Higgins to ride the other car down, without pushing the obstructing car farther, or without warning Higgins before he was swept off and injured, he was culpably negligent. Under the testimony, Higgins had a right to assume that Herrod would perform the duty of seeing that the car was "in the clear" and that there was room for Higgins safely to ride past it. Herrod had a lantern, and could have seen the obstruction and have warned Higgins of it, and his failure in this particular was negligence, whether he is regarded as a superior or only as a fellow servant of Higgins.

If, under the testimony, there is a question of fact as to whether Herrod or Higgins should have observed that the car was not "in the clear," it was exclusively one for the jury to decide. If it was a disputable fact,

under the testimony, as to whether Herrod was in control for the time being, and that his orders were to be obeyed by Higgins, the decision of that question, too, was within the province of the jury.

In assuming to decide these questions of fact, the trial court usurped the functions of the jury.   As there were some weak places and inconsistencies in Higgins's testimony the jury might have found for the defendant, but the plaintiff was entitled to have the testimony submitted to, and weighed by, the jury.

I am authorized to say that Mr. Justice CLARK A. SMITH joins in this dissent.