WILLIAM A. MAIB, *Appellant*, v. THE ÆTNA MILL &
ELEVATOR COMPANY, *Appellee*.

No. 16,565.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Injury to Employee—Vice Principal or
Fellow Servant—Neglect of Absolute Duty by the Master—
Question of Fact*. A mill company desired to remove a Corliss
engine weighing 6600 pounds out of the mill basement and
across a street occupied by railroad tracks laid in a cut. A
wooden trestle was constructed, upon which the engine was
moved and upon which workmen were required to stand to
assist in moving it. The trestle was built by a miller and a
number of men employed in various capacities about the mill,
from an abundant stock of sound material supplied by the
company. The men were allowed no discretion as to the plan
of the structure, the selection of the material or the adjust-
ment of the pieces. Every detail of the work was performed
under the authority, direction and control of the miller. The
trestle collapsed, owing to faulty construction, and one of the
workmen standing upon it was injured. *Held:* (1) Liability
on the part of the company for the injury can not be predi-
cated upon the superior rank and authority of the miller, but
must rest upon the breach of some nonassignable duty. (2)
The duty of the master depended upon what it undertook to
do and did do in the premises. If it merely directed the re-
moval of the engine, and left its employees free to exercise
their own judgment and discretion and produce the ultimate
result in their own way, the duty consisted in furnishing
sufficient sound material and competent servants. If the
master reserved to itself the erection of the trestle, and un-
dertook to supply a completed structure for use by those who
were to move the engine, the duty consisted in using reason-
able care to make the trestle reasonably safe for the purpose
it was designed to subserve. (3) The question which of the
two courses indicated was adopted was one of fact, to be de-
termined from the evidence by the jury. (4) In determining
a question of this character the important considerations are:
the nature of the structure, the purpose it subserves, the
necessity or otherwise for expert supervision, the qualifica-
tions of the workmen for the service required, the relation of
the work to their usual employment, the extent to which they
are allowed to act upon their own responsibility and the free-

dom of choice permitted them as to plan and method and means and result. (5) Under the facts as outlined above, and others stated in the opinion, a jury might reasonably infer that the mill company built the trestle and supplied it to the workmen for use as a completed structure.

Appeal from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed June 11, 1910. Reversed.

*D. M. Dale, S. B. Amidon, James Lawrence,* and *Levi Ferguson,* for the appellant.

*W. P. Hackney,* and *Ed T. Hackney,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff was injured while in the performance of his duties as an employee of the defendant. In an action for damages a demurrer was sustained to his evidence and judgment was rendered against him. The ground of the decision was that the injury was occasioned through the act of a fellow servant, and not through the negligence of the defendant. The plaintiff appeals.

The defendant undertook to move a Corliss engine weighing 6600 pounds out of the basement of its mill and across an adjacent street occupied by railroad tracks. The railroad tracks were located in a cut some three feet deep, and a crib, or trestle, was built to carry the engine over them. While the engine was on the trestle one of the timbers of which the structure was composed gave way, the engine was precipitated to the ground, and the plaintiff, who was assisting in guiding its movements, sustained an injury which necessitated the amputation of one of his legs.

H. G. Hackney was president and manager of the mill company. E. N. Perkins was a miller. A new engine was to be installed in the basement of the mill, which necessitated the dismantling and removal of the old one. The basement was six or eight feet deep, and an inclined trestle, perhaps twenty feet long, was built

to raise the old engine out of the mill. The street trestle was some thirty feet long. The engine was jacked up, put on gas-pipe rollers, and drawn over the trestle by means of a crab device set up on the bank across the street from the mill. The work was done by Perkins and a number of men employed in various capacities about the mill. One of these men was a fireman, another was a flour packer, another a second engineer. The plaintiff was a roustabout, assigned to no particular duty. From the inception of the work until disaster overtook it none of these men was permitted any individual initiative or discretion whatever. They were so many pieces moved by the dominating mind and will of Perkins, and Perkins alone. Nobody else connected with the company exercised any sort of authority, direction or control. The supervision of Perkins extended to the minutest details of the work. He picked out of piles of timber the pieces to be used and marked them with chalk, led the men to the piles of timber and showed them the pieces to be taken, directed when a plank and when a square timber was to be placed in the trestle, and supervised the adjustment of each piece, whether it was built into the trestle or bedded in the bank. He gave the orders in reference to the rope crab, directed the conduct of the men working it, and at the same time controlled the movements of the men at the engine, telling them when to move and when to block, when and how to adjust the rollers, and he assigned to each man his part. He was everywhere about the work. Nothing was done by others until he gave the order, and nothing was done by others except in the way he directed. Meanwhile he carried timbers, adjusted rollers and did other work, like the men whose activities he was guiding.

The negligence charged was that a span of the street trestle was built of flat timbers not themselves strong enough to bear the weight of the engine, and that they were insufficiently supported. It was not alleged that

Perkins, who it was claimed was a vice principal, was incompetent. The defendant argues that it furnished sound material and capable men, that these men, working together to a common end, adopted their own plan, selected their own timbers and adjusted such timbers in their own way, and consequently that as master the defendant discharged its full duty. The plaintiff weaves into his argument the conception that because Perkins was a foreman with authority to give orders and directions about the work which the plaintiff and others inferior in rank were bound to obey the defendant must respond for Perkins's negligence. This doctrine has been distinctly repudiated in the case of *Bridge Co. v. Miller,* 71 Kan. 13, followed recently in the case of *Lunn v. Morris,* 81 Kan. 94. Liability on the part of the defendant can not be predicated upon the superior rank and authority of Perkins, but must rest upon the breach of some nonassignable duty. What was the nature of the defendant's duty in this case?

The answer to the question just propounded depends upon what the defendant actually assumed to do and did do. If in fact it merely directed the engine to be taken out of the mill and across the street, and left the men detailed to do the work free to exercise their own judgment and discretion and produce the ultimate result in their own way, then the master discharged its duty to the plaintiff when it furnished sufficient sound material and competent servants. On the other hand, if the defendant reserved to itself the construction of the trestle and supplied it in a finished state to the plaintiff and his associates as an instrumentality for their use in moving the engine, just as the defendant might have imported into the scene a gang plank and turned it over to the men, then the principle making the defendant responsible for the condition of the instrumentality applies. This preliminary question must be answered before it can be known by what rule the defendant's liability is to be measured. It is a question

of fact, and must be determined from the evidence by the jury. Therefore the real inquiry on this appeal is whether there was any evidence that the defendant took the building of the trestle into its own hands and out of the hands of the plaintiff and his associates, so that the completed structure was the defendant's own device. The court is of the opinion there was evidence from which such an inference might reasonably be drawn. Therefore the cause should have been submitted to the jury, under appropriate instructions.

In cases of this character the important considerations are: the nature of the structure, the purpose it subserves, the necessity or otherwise for expert supervision, the qualifications of the workmen for the service required, the relation of the work to their usual employment, the extent to which they are allowed to act upon their own responsibility and the freedom of choice permitted them as to plan and method and means and result. It must always be borne in mind that the duty rests upon the master to furnish his servants a reasonably safe place in which to work and reasonably safe instrumentalities with which to work. Whenever the master is relieved from this obligation it must be because of some exceptional state of facts. An exception is often permitted when the employee himself makes his own place or instrumentality, as an incident to and part of the work he is set to do. This is because the matter necessarily falls by nature within the scope of his employment and is a genuine part of the work which he assumes to understand and has the skill to execute, so that a fair understanding may be implied that he is to pick out his own material from the stock supplied and adjust it in his own way to meet his own needs; and if a corps of such men work together in a common employment to a common end each one knows that he is to rely upon the skill and care of his fellows. But when these conditions are absent the exception is not allowed and the primary obligation of the master

subsists in full force.   A common case in which the
burden is cast upon the employee is that of a carpenter
who makes his own scaffolds as the building he is erect-
ing rises from the foundation.   The defendant con-
siders the analogy complete between such a case and the
one under decision.   Ordinarily the need for scaffolds
depends on the progress the carpenter is making with
the house.   House and scaffolds grow up together.   The
carpenter knows best what he should have and when he
should have it.   The work itself is part of his trade.   He
is familiar with the material he must use, knows defi-
nitely what weight the scaffold must sustain, has had
experience enough to know the quantity and quality of
material necessary to bear that strain, and knows how
to plan the scaffold and adjust the material.   He is not
only familiar with all the requirements of the situation,
but the whole matter is one which it is advantageous to
leave to his knowledge, judgment and skill, and the
common custom is to leave him free to act according to
his own discretion as the changing aspects of the ad-
vancing work demand.   In such a case he must vouch
for the safety of the scaffold he builds or which is built
by a comrade in the same work.   The principles in-
volved were clearly stated by Judge Shiras in *F. C.
Austin Mfg. Co. v. Johnson*, 32 C. C. A. 309 :

"On [the] part of the company it is claimed that the
scaffold was of such a character that it comes within
the exception to the general rule which relieves the
master from liability for stagings or scaffoldings
erected by laborers who are to work thereon, and
wherein it is held that the master's duty is performed
if suitable materials are furnished for the erection of
the scaffold.   This exception originated in cases
wherein a servant, such as a bricklayer, mason, car-
penter or the like, undertakes the performance of some
work, like the erection of a wall, shingling a roof or
painting a house, which of necessity requires the con-
struction of a scaffold or staging upon which the work-
men may stand when engaged at work, and wherein it
is customary for the master to furnish the materials
and the mechanics to actually construct therefrom the

staging necessary for the work. In this class of cases the workmen will know the extent of the burden to which the staging will be subjected and they are at liberty to make the same as strong as they deem necessary. The method of the construction of the scaffold is under their control, and they have the necessary knowledge of the strain it will be subjected to when in use to enable them, by the use of due care on their own part, to safely construct the same; and under such circumstances, if the scaffold proves to be insufficient, it will be due to the lack of proper care on the part of the workmen, assuming that the master has exercised due care in furnishing safe materials for the construction of the staging. In such cases the master is relieved from responsibility, not because the place where the workmen are employed is a scaffold simply, but because the master did not in fact undertake to furnish the scaffold for the use of the workmen when in his employ." (Page 313.)

The conditions in this case are wholly dissimilar. The building of the trestle was not a mere collateral incident to the prosecution of a principal work of the same general class. It bore a definite character of its own, as different from the work subsequently to be performed upon it as the building of a railroad bridge is different from the operating of trains over it when completed. The trestle served not merely as a place where men were to stand while at work, but it was required to support a ponderous and unwieldy body in irregular motion, subject to shock, vibration, instability of equilibrium, concentration of weight, and other fortuities. In view of the danger to life and limb and property involved, no warrant existed for suffering the trestle to be erected in a haphazard way by rule of thumb. An engineering problem was presented which required special qualifications at least for its safe solution, and technical knowledge and experience in mechanics would not have been amiss. The work of building the trestle did not fall within the usual occupation or the scope of the ordinary employment of a single laborer engaged upon it. Not one of

them professed to comprehend the task or the means by which it was to be accomplished. Probably no one of them could have approximated the weight of the engine, or the strain a single piece of timber used in the trestle would bear. Not one of them was in fact permitted to exercise the slightest judgment or choice or freedom of action in any particular, and there is nothing in the evidence to indicate that any one of them was charged with any responsibility whatever for the efficiency of the completed work. All the knowledge and skill and judgment and authority that was suffered to be displayed or that was displayed resided with Perkins, who personally and alone planned and superintended and directed and controlled. Under these circumstances the jury might well have concluded that the defendant did not trust the building of the trestle to the heterogeneous squad of men who moved as Perkins ordered, but that it erected the structure itself. The plaintiff testified that he knew no more about building a trestle than a child and was wholly incapable of passing judgment upon this one. He played virtually a dummy part in its construction, and consequently his participation did not absolve the defendant from its duty toward him.

The principles involved are discussed at length in section 614 *et seq.* of volume 2 of Labatt on Master and Servant, where many decisions are cited and numerous extracts from the opinions are quoted. The same matter appears as a note in 54 L. R. A., beginning at page 142. A good statement and application of the doctrine by a former circuit judge, now Justice Lurton, appears in the case of *Chambers v. American Tin Plate Co.,* 64 C. C. A. 129:

"There is a line of cases holding that when the employer furnishes suitable materials, and the workmen themselves construct a scaffolding or staging as a part of the work which they undertake to perform, and build it according to their own judgment, that the employer is not liable for an injury to one of their own

number sustained in the subsequent use of the structure, in consequence of negligence in construction. The erection and reërection of such a staging as the work requiring its use progresses, being itself a part of the very work which the employees are to do, takes it without the general rule in respect to the duty of the master to exercise reasonable care to furnish a reasonably safe place and appliances. . . . But the rule is quite otherwise if the employer himself undertake to furnish such scaffolding for the men who are to work thereon. In such case the duty is one of those positive duties of the master toward the servant which can not be discharged by the substitution of a competent agent. The act or service to be done is that of furnishing a reasonably safe place or appliance, and negligence in the doing of such a service is the negligence of the master, without regard to the rank of different employees. . . . In the case at bar there was no evidence tending to show that the masons, for whose use the scaffold in question was made, undertook to furnish, or build, or construct their own staging, and no evidence that it was customary for such workmen, directly employed each for himself, to build their own scaffolds. On the contrary, there was evidence tending to show that the defendant had employed one Frampton as boss carpenter to erect such scaffolding as should be needed, and to do such other carpenter work as should be needed in the progress of the building. There was evidence, therefore, from which the jury might reasonably infer that the defendant undertook to furnish all necessary scaffolding, and that it had in fact supplied a completed structure for the use of the plaintiff and his fellow masons. Whether we regard a mason's staging as a place to stand and do his work or as an appliance for the doing of his work is not very important for the purposes of this case. If an obligation to furnish such staging was assumed by the defendant, it was bound to exercise reasonable care to furnish an appliance reasonably safe and suitable for the purpose." (Pages 130, 131.)

The case of *F. C. Austin Mfg. Co. v. Johnson,* 32 C. C. A. 309, already quoted, is a leading authority. In that case a scaffold was necessary, not only as a place on which the workmen on a bridge might stand, but as

a support for the superstructure of the bridge while it was being put together. The scaffold was built by workmen who had no control over its construction but who acted under the direction of a skilled superintendent placed in charge by the manufacturing company. A portion of the opinion reads as follows:

"The liability of the master can not be determined simply by showing that the place where the workmen were engaged in his service was a scaffold, but it must depend upon the nature of the scaffold, the purposes it is to subserve; whether it could be properly left to the workmen to determine and control the method of its erection; whether they did in fact control its erection, or whether the master had charge thereof.

"In the case at bar the scaffold was intended, not only as a place whereon the workmen were to stand, but as a support upon which was to be placed the entire superstructure of the bridge during the course of its erection. If it should fall, through faulty construction, it might cause the entire or partial destruction of the steel work furnished by the company, and the company would be compelled to make good all damages thus caused. It is clear that such workmen as the defendant in error could not be expected to know the strain that would be placed upon this scaffold in the erection of the steel superstructure. It is equally clear that it would not have been open to the defendant in error to exercise any control over the method in which the scaffold was erected, or the material used in its construction. The purpose for which this scaffold was to be used renders inapplicable the reasons upon which the rule is based, that ordinarily the master is not responsible for the safety of stagings which the workmen put up as aids in carrying out the particular work they are employed to perform. The use to which it was intended to subject this structure, in that there would be placed thereon, not only the dead weight of the material composing the bridge, but also the strain caused by placing the different parts in proper position, clearly shows that the erection of the staging was not a matter that could be safely left to the control of ordinary laborers, but required skilled control by persons who, from experience, would know what strain would be placed on the staging; and the evidence shows that

in its erection the defendant in error exercised no control or judgment, but, on the contrary, it was erected solely under the direction of Charles Killifer, who, as a skilled expert, had been sent out by the company to erect the bridge and settle for it with the county authorities." (32 C. C. A. 309, 314.)

The judgment of the district court is reversed and the cause is remanded for a new trial.