No. 27,366.

OLOF NELSON, *Appellee,* v. THE CITY OF SALINA, *Appellant.*

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Liability for Injury to Servant—Fellow Servants—Vice Principal Working as Laborer.* The driver of a team and wagon working for a city cleaning a park and taking wood therefrom to a tourist camp maintained by the city is a fellow servant with another workman who is working with the driver under his direction and is riding on the wagon with him in the performance of the work.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed May 7, 1927. Reversed.

*W. S. Norris,* of Salina, for the appellant.

*J. S. Corder,* of Salina, and *W. W. McCanles,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, an employee of the defendant, sued to recover damages for injuries sustained by him in an accident

Master and Servant, 39 C. J. pp. 573 n. 34, 46 new, 579 n. 12; 18 R. C. L. 712.

caused by the alleged negligence of the foreman and vice principal of the city. The defendant demurred to the petition of the plaintiff; that demurrer was overruled; and from the order overruling it, the defendant appeals.

The only question presented is: Does the petition state a cause of action? It alleges among other things that L. B. Kemper was superintendent of the parks owned and operated by the city. The material parts of the petition are as follows:

"On the morning of November 10, 1924, L. B. Kemper, acting within the scope of his said employment and authority as such agent, ordered this plaintiff to go and assist the said W. W. Coburn, the defendant's foreman and vice principal, as aforesaid, in hauling for and on behalf of the said defendant some wood from Kenwood Park to the tourist camp in Oakdale Park. That the said W. W. Coburn, agent, foreman, and vice principal of the defendant, as aforesaid, and as such being in charge of said work, drove his team and wagon to said Kenwood Park for said wood, the plaintiff riding with him in said wagon. That when said wagon was loaded by the plaintiff and W. W. Coburn with wood at said park, under the direction of said Coburn as such agent and foreman of the defendant, as aforesaid, the plaintiff with due caution and without any apparent danger to himself got upon said wagon for the purpose of riding on same to the tourist camp in Oakdale Park, as aforesaid, where said wood was to be delivered. That the said Coburn then got upon said wagon and started to drive same to Oakdale Park, as aforesaid. That while driving said team and wagon in Kenwood Park said W. W. Coburn, carelessly and negligently, drove said team and wagon in such a manner that said wagon was caused, allowed and permitted to be driven too near and over the Saline river bank at said place, causing the wagon box of said wagon to be thrown off and the said wagon to be overturned and the wagon to lie on its side and the bed of said wagon to light on top of the wood, causing the plaintiff to be thrown against hard surfaces and be caught under the wood and load, and as result thereof to receive serious, permanent and lasting injuries. . . .

"Plaintiff says that his injuries were caused through the direct carelessness and negligence of the defendant, its agent, servant, foreman and vice principal in the following respects, to wit:

"(a) In that, although said wagon and team were on level ground, and by the use of ordinary and usual care the said W. W. Coburn could or should have driven same in a manner as to not injure the plaintiff, yet he failed, neglected and refused so to do, and instead thereof pulled the left lines with which he was driving and caused the left horse on said wagon to turn suddenly to the left causing the left wheels of said wagon to run over the bank of said river and the said wagon to be overturned, as aforesaid.

"(b) In that, the said W. W. Coburn did not keep a reasonably sufficient lookout, while driving said team and wagon, as aforesaid, and as result thereof caused, allowed and permitted said team to swerve to the left and the left wheels of said wagon to be and slide over the bank of said river and overturn said wagon, as aforesaid.

"(c) In that, although said W. W. Coburn, vice principal and foreman of the defendants, as aforesaid, pulled said horses to the left with force and violence so that the said wheels of said wagon went over said embankment, the said W. W. Coburn failed, neglected and refused to warn said plaintiff that he was about to do so in time for the plaintiff to have jumped from said wagon and have avoided being injured."

It is not alleged that any tool or implement with which the plaintiff was working was defective; neither is it alleged that the place in which the plaintiff was required to work was unsafe. The allegation of the petition is that the accident was caused by the negligence of Coburn in driving the team and wagon.

Is the city liable for the negligence of Coburn? It was not the duty of the city to provide a superintendent to drive the team and wagon. When the city provided a competent person to do that work, not as a foreman, but as a laborer, it discharged its obligation to the plaintiff. Driving the team and wagon was not the act of a foreman or superintendent; it was the act of a workman. Coburn was working with the plaintiff to load the wood and take it from the park to the camp; but, while driving the team, he was not acting as a foreman; he was acting as a colaborer with the plaintiff.

In 39 C. J. 573 the following language is used:

"Generally speaking a mere superiority in the grade or rank of employment does not prevent the employee of superior grade from sustaining the relation of fellow servant to other employees of the same master. But, although the rule is apparently not in effect in all jurisdictions, in some jurisdictions it is held that an agent to whom is intrusted the entire management of the master's business, or the management of a separate and distinct department, is a vice principal and not a fellow servant. Closely allied to this rule is the so-called superior servant doctrine adopted in some of the states, under which a servant given the power to control other servants is not their fellow servant, where his negligence in the exercise of such control is the cause of the injury to the inferior servant."

The same authority, on page 579, says:

"In most jurisdictions the superior-servant rule is either expressly or impliedly repudiated, and it is held that the fact that the person whose negligence caused the injury was a servant of a higher grade than the injured servant, or that the latter was subject to the direction or control of the former, and was engaged at the time in executing the orders of the former, does not prevent the application of the fellow-servant rule to free the master from liability."

To this text is cited a large number of cases from the United

States courts, the English courts, and the courts of twenty-nine states of the American union.

In 2 Bailey on Personal Injuries, 2d ed., § 549, p. 1529, it is said:

"Difficult questions have arisen where the superintendent was engaged in manual labor at the time of the accident, either in assisting plaintiff or otherwise, and the manual act of the superintendent results in causing the injury. The rule is that the employer is not answerable for the negligence of a person intrusted with superintendence who at the time of, and in doing the act complained of, is not exercising superintendence, but is engaged in mere manual labor or the duties of a common workman. Unless the act itself is one of direction or of oversight, tending to control others and to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence is in the exercise thereof within the meaning of the statute."

In 4 Labatt's Master and Servant, 2d ed., p. 4313, it is said:

"A large number of decisions proceed upon the theory that a superior employee, although he may be a vice principal by virtue of his official rank, does not represent the master as to any purely manual acts which he may do while engaged in manual labor. Or to put the matter in another form, the defense of common employment is allowed to prevail if the fact of the negligent servant's superiority was not one of the actual evidential elements involved; that is to say, if the injury might as well have happened, even though he was not superior; or, as it is also expressed, if the negligence complained of consisted of some act or omission of a vice principal 'which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority,' the master will not be liable."

To this text is appended a note giving a large number of cases in which it was held that a foreman who assisted another employee in the performance of manual labor was a fellow servant and the employer was not liable for the negligence of the foreman in performing such manual labor.

In *Crist v. Light Co.*, 72 Kan. 135, 83 Pac. 199, this court said:

"A foreman under whom workmen are employed is a fellow servant with the workmen when engaged with them in accomplishing the common task or object, but when discharging or assuming to discharge the duties toward the workmen which the law imposes on the principal he is a vice principal."

In *Lunn v. Morris*, 81 Kan. 94, 105 Pac. 15, this court said:

"Several laborers over whom a foreman had been appointed to oversee and direct their work were engaged in moving bones from the defendant's press-room to a dump, by the use of trucks passing over a gangway six feet wide, elevated five feet above the surface. Two laborers were pushing one of these loaded trucks along this gangway when, the truck becoming stalled, the fore-

man ordered them to hurry up, and exclaimed 'Pull it up,' at the same time seizing one of the wheels of the truck and giving it a jerk which caused the shafts to turn suddenly, striking the plaintiff's legs and knocking him from the gangway, whereby he was injured. Although the foreman was negligent in his conduct causing the injury, as found by the jury, still this negligence was that of a fellow servant, and the plaintiff cannot recover. (Following *A. T. & S. F. Rld. Co. v. Moore,* 29 Kan. 632; *Brick Co. v. Shanks,* 69 Kan. 306; *Bridge Co. v. Miller,* 71 Kan. 13; *Crist v. Light Co.,* 72 Kan. 135.)"

This matter was referred to in *Henry v. Boiler Works,* 87 Kan. 571, 574, 125 Pac. 67, where the court said:

"The defendant maintains that if sound materials were furnished to the workmen, and the accident resulted from their want of care in putting them together, no liability can attach to the defendants, because the negligence, although the act of the foreman, was that of the plaintiff's fellow servant. There is abundant authority to that effect. (*Knudsen v. LaCrosse Stone Co.,* 145 Wis. 394, 130 N. W. 519, and cases cited there and indicated by note thereto in 33 L. R. A., n. s., 226; Note, 3 L. R. A., n. s., 500; Note, 18 A. & E. Ann. Cas. 611; 26 Cyc. 1329, 1330, especially paragraph of note under subhead 'Supervision of Foreman,' in the third line of which the word 'not' is obviously omitted by inadvertence; 20 A. & E. Encycl. of L. 81, 82; 4 Thompson, Commentaries on the Law of Negligence, § 3760; 2 Labatt, Master and Servant, §§ 614-616.)"

The headnotes to *Dwyer v. American Express Co.,* 55 Wis. 453, read:

"1. In an action against an express company for injuries received while in its employment, an allegation in the complaint that such injuries were caused by the negligence of one who was the 'agent and manager of the said company's office' in the city where the plaintiff was employed, does not, in the absence of further allegations showing what the duties and powers of such agent were, create the presumption that he was a vice principal for whose negligent acts resulting in injury to its employees the express company would be liable.

"2. And especially does not such presumption arise where the complaint further shows that the acts from which the injury resulted were done by such agent while engaged as driver of the team drawing goods between the company's office and the depots and while defendant was riding to and fro, assisting in loading and unloading such goods.

"3. Whether if the complaint had alleged facts showing that such agent was in fact the vice principal of the company and empowered to do all acts at a certain city which the company was authorized to do, the company would be liable for his negligence while engaged in the same work with the plaintiff, is not determined."

That case was again before the supreme court of Wisconsin in *Dwyer v. The American Express Co.,* 82 Wis. 307, where the court said:

"Where the master was not guilty of any negligence or breach of duty in the employment of his servants, his liability for an injury to one servant caused by the negligence of another engaged in the same business depends upon the nature of the act in the performance of which the injury was inflicted, without regard to the rank of the negligent servant. And the master is not liable, in such case, unless the negligent act pertained to a matter in respect to which he owed a direct duty to the servant injured."

In the statement of the case the following is found:

"This action was brought is 1886 to recover damages for the same injuries. The complaint herein differs from the complaint in the former action only in that it is now alleged that Colvin had all the authority of the express company at Oshkosh—that is to say, he was defendant's vice principal there—and that it was not his duty to drive the team which he was driving when the plaintiff was injured, 'but that it was the duty of, and said work was performed by, servants employed by the defendant for that purpose.' The present appeal is by the defendant from an order overruling a general demurrer to the complaint." (p. 308.)

The order of the court was—

"BY THE COURT: The order overruling the demurrer to the complaint is reversed, and the circuit court directed to sustain such demurrer." (p. 312.)

Part of the headnotes to *Cunningham v. Wilkes-Barre Railway Company*, 78 Pa. Sup. Ct. 550, reads:

"Prior to the passage of the workmen's compensation act an employer was not responsible for the negligence of a vice principal, which caused injuries to a fellow servant, when the vice principal was engaged in the duties of an ordinary workman. It was only for the negligence of the vice principal acting as such in relation to something which it was the duty of the employer to do, that the latter was responsible to an employee.

"Where the superintendent of a trolley company, who was operating a trolley car while the motorman ate his breakfast, negligently ran past a signal, resulting in a head-on collision with another car and injuring its motorman, the company was not liable, as the superintendent was not representing the company as vice principal, but was engaged in the ordinary work of a motorman, the risk of whose negligence was assumed by his fellow servant."

The present action can be distinguished from *Spear v. City of Wichita*, 113 Kan. 686, 216 Pac. 305, in the following particulars: In *Spear v. City of Wichita*, the plaintiff was ordered by his foreman to do certain work, in the performance of which the foreman took no part in the actual labor connected therewith—he remained a foreman; in this case, the vice principal Coburn entered into the work, performed manual labor connected with the work, and thereby became a colaborer and fellow servant with the plaintiff, in which capacity he was acting at the time of the accident. In *Spear v.*

*City of Wichita,* the plaintiff was ordered to work in a place that became unsafe as the work progressed. In the present action, the place in which the plaintiff was working at the time he was injured was not unsafe without negligence on the part of Coburn. In *Spear v. City of Wichita,* the accident resulted from the unsafe condition of the place in which the plaintiff was working. In the present action, the accident resulted from the negligence of Coburn in driving the team and wagon.

The petition does not state a cause of action; the demurrer should have been sustained. The judgment is reversed.

JOHNSTON, C. J., dissenting.