No. 27,824.

LAURA B. CARTER et al., Heirs of Dick Carter, Deceased, *Appellees,*
v. O. W. UHRICH and B. H. UHRICH, Copartners, etc., *Appellants.*

(264 Pac. 31.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Liability for Injury to Servant—Vice Principal.* A shipping clerk in a door factory who selects workmen from other departments of the factory to accompany him in taking finished doors to the railway station and assist him in loading and unloading the same is not necessarily a vice principal, and especially not such while he is returning with the men on the truck to the factory.

2. SAME—*Liability for Injury to Servant—Who Are Fellow Servants.* A driver of a truck and trailer used by a factory to haul finished products and other material to and from the railway stations who helps to load and unload the material hauled is a fellow servant of the workmen who are selected to assist in loading and unloading such material, while they are doing such work and while going to and returning from the station, although he may be working under a different foreman and in a different department of the same factory.

3. SAME—*Liability for Injury to Servant—Fellow Servants—Relation Does Not Alternate With Hauling and Returning.* Where in the very nature of the business of loading, hauling and unloading goods for shipment there is necessarily an empty-handed return, the relation of fellow servant does not alternate with the actual fact of hauling and returning so as to consider the latter as a matter of transportation only.

4. SAME—*Assumption of Risk by Servant—Scope of Employment.* The dangers incident to the duties which the workman was in this case asked to perform were such as could be readily and easily understood and appreciated by any workman, especially when he had previously performed similar duties, and he therefore assumed the risk notwithstanding such duties might have been outside of the scope of his employment.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed February 11, 1928. Reversed.

*Chester Stevens,* of Independence, for the appellants.
*Sullivan Lomax* and *Otho W. Lomax,* both of Cherryvale, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought originally by the employee himself against his employers to recover damages for per-

Master and Servant, 39 C. J. pp. 562 n. 24, 569 n. 5, 621 n. 95, 805 n. 97 n. 3; 18 R. C. L. 684, 760.

sonal injuries sustained by him in being thrown from a trailer of a truck driven by an employee of the defendants around a corner at an excessive rate of speed. A general verdict for the plaintiff for $2,000 and answers to special questions were returned by the jury. Judgment was rendered thereon in favor of the plaintiff, from which defendants appeal. Pending the appeal the injured workman died and the action has been revived in the name of his heirs.

The case was here once before on the question of a demurrer to a part of the answer, and is reported in 122 Kan. 408. The main question here for consideration is that of fellow servant, and incidentally that of vice principal. A preliminary question was presented by appellees at the time of the argument involving the right of the appellants to a review of any points included in or affected by a motion for a new trial where such motion and its grounds were not fully set out in the abstract but were simply referred to as including all the statutory grounds. The appellants insist that no such rule exists, but by leave of court have filed a supplemental abstract setting out a copy in full of the motion of defendants for new trial, and we shall consider such supplemental abstract as supplying any defect there may have been in the regular abstract for the purposes of this case, without attempting to decide the merits of this preliminary question.

The plaintiff, prior to and at the time of his injury, was employed in the defendants' door factory at Independence as a hand sander. He had been working for defendants for about three months at the time of the injury. In addition to his usual work of hand sanding, when he was not busy he did janitor work; also wrapped and packed doors, crated merchandise for shipment, moved material in the rooms, and loaded, unloaded and piled lumber and other merchandise and material. He went to the different railway stations and different jobs in town to help load and unload doors and material many times—one witness said fifteen or twenty times. He was familiar with the trailer on which the doors were hauled. It had a flat top 8 x 16 feet, with no side rails or posts. He was sitting on the front of this trailer going back to the factory from the depot when the injury occurred. One other workman was sitting on the front with him and one was standing in the middle of the trailer. Adamson, the truck driver, and McGuire, the shipping clerk of the defendants, were in the cab of the truck. The truck was going at a rapid rate of speed. Suddenly, at an intersection

of streets the truck was checked up because of a pedestrian being in front, then was suddenly started up again, turning the corner. At this sudden start and turn the plaintiff was thrown off the trailer and injured.

McGuire had asked plaintiff and the other two men to help with the load of doors to the depot. McGuire and the driver, Adamson, both helped with the work of loading and unloading the doors. The allegations of the petition with reference to negligence are as follows:

"That the negligence of the defendants consisted of this, to wit: that the defendants knew or could have known, and ought to have known by the exercise of ordinary care, that said truck driver, Tom Adamson, was a fast and speedy driver, and that he frequently and in fact at all times exceeded the speed limits and violated the laws of the state of Kansas and the ordinances of the city of Independence by driving over, through and across the streets of Independence at a rate of speed greater than twelve miles per hour, and that he drove over and across the intersections of said streets one and another at all times at a speed greater than six miles per hour."

With reference to vice principal, the allegations are as follows:

"Plaintiff further alleges that the said McGuire was the vice principal of the said defendants, that he occupied a seat with the driver and directed the movements of said truck and knew at all times of the high and unlawful rate of speed of said truck."

The jury found that the car was traveling at the rate of approximately 15 miles per hour when it entered the street intersection and between 8 and 10 miles per hour when plaintiff fell from the trailer, and that it traveled from the time he fell from 14 to 16 feet before it stopped. They further found that all five men, including McGuire and Adamson, were sent to the station to unload the doors, and that all did help. The following is a copy of the ninth question and answer:

"9. If you find for the plaintiff, in what respects do you find the defendants negligent? A. They were negligent in not providing a safer means of transportation."

No question was asked and no finding was made on the question of McGuire being a vice principal. The answers show he was sent to the station for the purpose of unloading the doors and that he assisted and helped in doing so. The negligence found by the jury was not in failing to command Adamson to reduce the speed, but in not providing a safer means of transportation. McGuire had noth-

ing to do with providing any means of transportation, safe or unsafe. The testimony shows that one Sparks was foreman and in charge of the trucks and their drivers. In the opinion in *Crist v. Light Co.,* 72 Kan. 135, 83 Pac. 199, it was said:

"He [a foreman] is a vice principal when performing the duties, or aiding in performing the duties, which by law devolve upon the master." (p. 140.)

In the case of *Higgins v. Railway Co.,* 70 Kan. 814, 79 Pac. 679, the conductor of a freight train gave the switch list to the rear brakeman, who proceeded to make up the train by giving orders as to the switching of each car. The head brakeman, obeying his orders and not being in as good a position to see the danger as the rear brakeman, was injured, and it was held "that the rear brakeman did not represent the company, nor stand in such relation as to make him the superior of the head brakeman." At the time of the injury McGuire was not discharging or assuming to discharge any duty toward the workmen which the law imposed upon the principal. He was simply returning with the workmen to the factory.

"Liability on the part of the company for the injury cannot be predicated upon the superior rank and authority of the miller, but must rest upon the breach of some nonassignable duty." (*Maib v. Mill Co.,* 82 Kan. 660, syl., 109 Pac. 688.)

"All employees of the same master engaged in the same general business, whose efforts tend to promote the same general purpose and accomplish the same general end, are fellow servants.

"The assignment of servants of the same master to separate departments of the same general enterprise does not affect their relation as fellow servants unless such departments be so far disconnected that each one may be regarded as a separate undertaking." (*Bridge Co. v. Miller,* 71 Kan. 13, syl. ¶¶ 1, 2, 80 Pac. 18.)

We find nothing in the evidence to justify a conclusion that McGuire was a vice principal in connection with any of the facts or circumstances leading up to the injury in this case.

The appellees claim that the failure of the defendants to provide a safer driver was included in the finding of the jury that the negligence consisted "in not providing a safer means of transportation"; that the truck and trailer were safe and all right, but they would not be a means of transportation without a driver. Then, if Adamson, the driver, was a part of the means of transportation and the injury could be traced to his negligence, the defendants would

be liable unless he was a fellow servant of the plaintiff. In the
case of *Donnelly v. Packing Co.*, 68 Kan. 653, 75 Pac. 1017, the court
said:

"Whenever coemployees under the control of one master are engaged in the
discharge of duties directed to one common end, such duties being so closely
related that each employee must know he is exposed to the risk of being in-
jured by the negligence of another, they are fellow servants, and each assumes
the risk to which he has thus exposed himself." (Syl.)

"Fellow servants assume the risk of injury from each other in their common
conduct of the master's work." (*Bridge Co. v. Miller*, supra, syl. ¶ 4.)

Attention is called to the findings of the jury that Adamson was
sent to help and did help to load and unload the doors. Under the
general acceptance of the term, as well as the distinguishing defini-
tions cited above, Adamson was a fellow servant of the plaintiff.

"All who serve the same master, work under the same control, derive au-
thority and compensation from the same common source, are engaged in the
same general business, though it may be in different grades or departments of
it, are fellow servants who take the risk of each other's negligence." (2 Bouv.
Law Dict. 1201.)

The case of *Nelson v. City of Salina*, 123 Kan. 522, 256 Pac. 123,
is the most recent case on this particular subject, and its syllabus is
as follows:

"The driver of a team and wagon working for a city cleaning a park and tak-
ing wood therefrom to a tourist camp maintained by the city is a fellow servant
with another workman who is working with the driver under his direction and
is riding on the wagon with him in the performance of the work."

The appellees insist that Adamson, the driver, was not a fellow
servant of the plaintiff for two reasons, and cite appropriate au-
thorities in support of such contention: First, that plaintiff at the
time of the injury was a passenger being furnished transportation
back to the factory after unloading the doors at the station; second,
that the fellow-servant rule does not obtain in this case because
plaintiff was required to perform, and was performing at the time of
the injury, work outside the scope of his employment. Appellees
cite the case of *Phillips v. Armour & Co.*, 108 Kan. 596, 196 Pac. 245,
where it was said:

"A packing company employed a transfer company to convey its employees
to and from their work and directed and controlled the transportation. *Held*,
that having assumed the responsibility of the transportation of its employees
the company owed them the duty to provide vehicles that were reasonably

safe and the obligation to see that the drivers should exercise reasonable care in operating them." (Syl. ¶ 1.)

The entire connection of the injured employee in that case with the bus and the driver was one of transportation. The bus had nothing whatever to do with his work or employment except that it was furnished as a convenience or inducement. The workman had no connection with the driver as in the case at bar, where he worked with him to a common end and for a common purpose. The same distinction exists in the case of *O'Bierne v. Stafford*, 87 Conn. 354, with reference to the agreement to furnish transportation to a servant girl to and from church every Sunday, where it was held the driver, a servant of the same master, was not her fellow servant because she was not working in any way with him or to a common end or purpose, but was simply being transported as per agreement with the master. In the Oklahoma case cited by appellees, *Shunka-molah v. Potter*, 106 Okla. 91, where a servant girl was being transported from her own home to that of her employer in his automobile driven by his chauffeur to help in his home on a Christmas occasion and was injured on the trip by negligence of the chaffeur, it was purely a question of transportation with no service or work in common. Let us compare with these cases the case of *Erjauschek v. Kramer*, 126 N. Y. S. 289, where a hired maid, as an incident to her employment and duty, rode in the automobile with her employer and his wife. There it was held that she and the chauffeur were fellow servants. It is not a question of transportation in the case at bar. The workmen were simply returning from the station where they all worked together, and were returning in the usual and ordinary way that any workmen would return.

Appellees cite 39 C. J. 805 in connection with the duty being outside the scope of the employment:

"Where a servant is ordered to perform work outside of the scope of his employment, he will not by obeying the order necessarily assume the risk incident to the work. There is no implied agreement that the servant will take on himself the risk incident to such service."

Appellees say that the question is not whether the plaintiff assumed the risk incident to the work of unloading the truck, but whether he assumed the risk of being transported to and from the place where the work was to be done. The hauling of goods to and from the station necessarily includes transportation, and the trans-

portation with all of its incidents is inseparable therefrom. This was confirmed in the case of *Donnelly v. Packing Co.*, above cited, where a meat-trucker was injured while trucking meat from one floor to another in the same building by means of a truck, which was wheeled into an elevator. The elevator, the day of the injury, was being operated by another meat-trucker, inexperienced with elevator operating, and the elevator dropped. The going up and returning were simply a part of the work of removing the meat, and the substituted elevator operator was held to be a fellow servant; and it would have made no difference whether the meat truck was loaded or empty when the elevator dropped. As to being required to perform work outside the scope of one's regular employment, we think the following two sentences of the same paragraph from 39 C. J. 805, above cited, should be read in connection with the above quotation, viz.:

"Conversely the mere fact that the servant is injured while performing an act outside of the scope of his employment under the direction of the master or some one representing him will not necessarily give him a cause of action against the master. . . . If the servant understands and appreciates the danger of the act which he is ordered to perform, he assumes the risk notwithstanding it is outside of the scope of his employment."

It does not appear to us that the fellow-servant rule should in this case be modified, either on account of the facts of the case or the law applicable to doing work outside the scope of one's employment. The testimony shows his employment was extremely diversified, and loading and unloading goods was no small part of it; besides, the risks incident to such work of loading and unloading goods and returning from such trips to the station were not unusual or difficult to be anticipated and understood by the ordinary workman. We have no hesitancy in concluding that the injured workman in this case was a fellow servant of the driver of the truck and the doctrine of the assumption of the risk caused by the negligence of a fellow servant should apply here and will prevent a recovery for the injury sustained.

The appellants demurred to the evidence of the plaintiff, which was overruled. They asked for certain instructions, objected to certain instructions given, and, after verdict, filed and presented a motion for judgment for the defendant notwithstanding the general verdict. Having reached the conclusion that the doctrine of fellow servant applies, it will not be necessary to consider any of the other assignments of error, but to conclude that the defendants are not

liable to the heirs of the workman for the injury he sustained, and that judgment should be rendered for defendants on the special findings notwithstanding the general verdict.

The judgment is reversed with instructions to render judgment for defendants for costs.