**BARUCH v. SAPP.**

No. 5989.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 17, 1949.

Decided Dec. 21, 1949.

Douglas McKay, Columbia, S. C. (Douglas McKay, Jr., and Julius W. McKay, Columbia, S. C., on the brief), for appellant.

Henry H. Edens, Columbia, S. C. (Henry Hammer, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This civil action was brought in the District Court of the United States for the Eastern District of South Carolina, under the death statute, G.S.1935, 60-3203, or Lord Campbell's Act of Kansas, G.S.1935, 60-3204, by plaintiff as Administrator of the estate of John Zozula against Belle W. Baruch, a resident and citizen of South Carolina, to recover damages for the death of Zozula, who was killed in the crash of a plane, belonging to Miss Baruch, on April 7, 1946, at Wichita, Kansas, allegedly due to the negligence of her agent Horton, engaged to pilot the plane.

The defendant filed an answer denying the material allegations of the complaint and also set up in her answer the defense of assumption of risk and fellow servant. Motions for a nonsuit and a directed verdict were entered by the defendant and overruled by the trial judge. The case was submitted to the jury which rendered a verdict in favor of the plaintiff in the sum of $10,000 and judgment was fully entered thereon. Thereafter the defendant moved for judgment *non obstante veredicto* and for a new trial. These motions were overruled by the District Court.

Defendant has duly appealed to us, asserting three grounds for reversal: (1) under the law of Kansas (which we must apply here) plaintiff's intestate, Zozula, who was employed by defendant as a mechanic to repair and service the plane, was the fellow servant of the pilot, Horton, and hence there can be no recovery in the instant civil action; (2) Zozula assumed the risk of flying with Horton, knowing that Horton was intoxicated; and (3) there was insufficient evidence that Horton's negligence was the cause of the crash.

Defendant purchased the plane in question from the Beech Aircraft Corporation. It was a twin-motored cabin plane, of the

type designated as the D-18s, with dual controls and seats for pilot and co-pilot. Defendant employed Colonel Horton, an army officer on terminal leave, as pilot of this plane and instructed him to proceed to Wichita, Kansas, to accept delivery of the plane, and to fly it to defendant's home in Georgetown, South Carolina, via Wilmington, Delaware, where additional radio equipment was to be installed. Defendant also instructed Horton to hire a mechanic for this plane (and we quote from her testimony) "to keep the mechanical ends of the plane in order and go with it when necessary on trips." John Zozula was so employed by Horton.

The plane was delivered to Horton at Witchita and accepted by him for defendant. The day before the crash, Horton made a test flight, on which Zozula accompanied him. On that trip, although Zozula was not a licensed pilot, he was allowed to fly the plane for a considerable distance.

At the time of the last, fatal takeoff, Horton was in the pilot's seat, Zozula in the co-pilot's seat, and one Myers was a passenger in the rear section of the plane. Immediately following the takeoff, the plane climbed too steeply, and before attaining a height of more than seventy-five feet above the ground, suddenly banked, dipped and crashed, killing both the pilot, Horton, and the mechanic, Zozula. Myers, the passenger, survived.

The principal question presented on this appeal is whether or not a person employed to pilot a plane is, under the law of Kansas, the fellow servant of a person employed to repair and service such plane. See Read v. New York City Airport, 145 Misc. 294, 296, 259 N.Y.S. 245, 246; Wilson v. Colonial Air Transport, Inc., 278 Mass. 420, 425, 180 N.E. 212, 214, 83 A.L.R. 329; Parker v. James E. Granger, Inc., Cal.App., 39 P.2d 833, 835, affirmed 4 Cal.2d 668, 52 P.2d 226; Greunke v. North American Airways Co., 201 Wis. 565, 569, 230 N.W. 618, 619, 69 A.L.R. 295; Seaman v. Curtiss Flying Service, Inc., 231 App.Div. 867, 247 N.Y.S. 251. No cases from the State of Kansas have been brought to our attention involving the application of the fellow-servant doctrine to employees engaged in aviation. In that respect, this is a pioneer case. Our decision, therefore, must rest by analogy on cases dealing with employees in other fields.

A clear statement of the Kansas approach to the fellow-servant doctrine appears in Burroughs v. Michel, 142 Kan. 814, 815, 52 P.2d 633, 634: "'All employees of the same master, engaged in the same general business, and whose efforts tend to promote the same general purpose and accomplish the same general end, are fellow servants. * * * The assignment of servants of the same master to separate departments of the same general enterprise does not affect their relation as fellow servants, unless such departments are so far disconnected that each one may be regarded as a separate [occupation].'" (Italics ours.)

The line of cases which perhaps bear most closely on the question before us deal with railroad employees, although under a Kansas statute railroads may no longer invoke the fellow-servant doctrine. Thus, in Dow v. Kansas Pacific Ry. Co., 8 Kan. 642, a brakeman and the conductor of the train on which they were both working in the common employment of the defendant railway company were fellow-servants, and the defendant was not liable for the negligence of the conductor which resulted in injury to the brakeman. And in Union Pacific Ry. Co. v. Milliken, 8 Kan. 647, the court held that both a brakeman and an engineer employed by the defendant railroad would be fellow-servants if they "were both in the service of the defendant" and "engaged in the common service of making up a train of cars for the company, although the particular duties" of the engineer "pertained to the managing of the motive power of the train," and the brakeman's to the coupling of the cars. See, also, Kansas City, M. & O. Ry. Co. v. Loosely, 76 Kan. 103, 90 P. 990; Kansas Pacific R. R. Co. v. Peavy, 34 Kan. 472, 8 P. 780; Atchison, Topeka & Sante Fe R. R. Co. v. Moore, 29 Kan. 632.

The broad application of the fellow-servant rule in Kansas is apparent from

the decisions in Donnelly v. Cudahy Packing Co., 68 Kan. 653, 75 P. 1017, and Atchison & Eastern Bridge Co. v. Miller, 71 Kan. 13, 80 P. 18, 1 L.R.A.,N.S., 682. In the Donnelly case, the plaintiff was employed to load trucks with meat and wheel them to an elevator in defendant's packing house. While riding the elevator with a load of meat plaintiff was injured because of the negligence of the elevator operator who was likewise employed by the defendant. The court held the plaintiff and the elevator operator were fellow-servants and said, 68 Kan. 653, 75 P. 1018; "* * * whenever co-employes under the control of one master are engaged in the discharge of duties directed to one common end, *such duties being so closely related that each employe must know he is exposed to the risk of being injured by the negligence of another* they are fellow servants, and each assumes the risk to which he is thus exposed. * * * Plaintiff and the operator of the elevator were engaged in one common pursuit—that of curing and packing meat. Each worked in a different line of employment, but were in the same general business, and so closely related that the negligence of one was liable to inflict injury to the other. Therefore he (plaintiff) must be held to have assumed the risk of the negligence of his co-employe who ran the elevator." (Italics ours.)

In the Bridge Company case, defendant was engaged in the construction of a bridge. A mechanic employed to repair stationary engines used in constructing the bridge was killed by the negligence of the operator of a piledriver. The court applied the fellow-servant rule and denied recovery, even though the men belonged to different gangs and the only common purpose in their work was the building of the bridge.

In Nelson v. City of Salina, 123 Kan. 522, 256 P. 123, the plaintiff was employed to load wood upon a wagon and unload it afterwards, and was injured, while riding on the wagon, by the negligence of the driver in managing the horses. The driver, who was employed to supervise the loading and unloading of the wood, was held to be the fellow-servant of the plaintiff.

And in Carter v. Uhrich, 125 Kan. 192, 264 P. 31, the plaintiff was sent by his employer to deliver doors away from the employer's factory. Another employee drove the truck carrying the doors. On the return trip, after the doors were delivered, plaintiff was killed because his co-employee drove the truck in a negligent manner. The court held, 125 Kan. 192, 264 P. 34: "We have no hesitancy in concluding that the injured workman in this case was a fellow servant of the driver of the truck and the doctrine of the assumption of the risk caused by the negligence of a fellow servant should apply here, and will prevent a recovery for the injury sustained."

Furthermore, a foreman is the fellow-servant of the workers under him save when he is performing a non-delegable duty of the master. Barnaby v. Sears, Roebuck & Co., 132 Kan. 447, 295 P. 715; Crist v. Witchita Gas, Electric Light & Power Co., 72 Kan. 135, 83 P. 199.

■ The court below in dismissing the motion for judgment non obstante veredicto did so on the ground that the mechanic Zozula, "had nothing to do with the actual operation of the plane" and "was charged with no duty respecting the *operation or movement* of the plane." This is at least open here to very grave doubt. We think that, in the light of the cases previously cited, it was not necessary for Zozula to be charged with a duty concerning the *actual* operation or movement of the plane. Nor can we go along with the conclusion of the District Court that Zozula was a mere passenger with no duty in connection with the flight.

The brakeman and the conductor of a railroad train are not charged with any duty in connection with the actual operation of the engine; yet they may be fellow-servants of the engineer. Certainly the meat-trucker had no duty with respect to the operation of the elevator, in Donnelly v. Cudahy Packing Co., supra; yet he was held to be a fellow-servant of the elevator operator. Nor did the laborer, in the Nelson case, supra, riding on a wagon to load and unload wood, have any duty concerning the movement of the wagon.

386

Horton and Zozula were enagaged in the same general business and attempting to promote the same general purpose and accomplish the same general end, i. e., the movement of the plane. In fact, the evidence shows that Zozula was assisting the pilot, Horton, in operating the plane on the takeoff. Zozula supervised the gassing and preparation of the ship for flight, assisted in making observations as to winds and weather, etc., took his place by Horton in the co-pilot's seat where he could, if necessary, exercise equal control of the flight with the pilot, started the engine, and when last seen by plaintiff's witness, Myers, was operating the mixture control which was necessary and essential to the flight. And we think Zozula was charged with the duty of remedying any mechanical difficulty which might have occurred while in flight; for one of the purposes of his employment (according to the testimony of defendant) was to go with the plane, when necessary, on flights.

As to the test flight from Wichita to Kansas City, witness Hill, who accompanied Horton and Zozula on this trip, testified:

"Q. Who seemed to be assuming the direction and instruction on that flight? A. Well, Zozula took the controls after we got off the field at Kansas City.

"Q. Who told him to? Who was running the ship? Who was giving the orders? A. The Colonel instructed him to go ahead and fly it."

And, as to what happened just before the fatal takeoff, this same witness testified:

"Q. All right, I wanted to lead up to that. You had a conversation in which both Colonel Horton and Zozula took part; is that right? A. That is true.

"Q. And what was that conversation? A. Well, it was as to Colonel's ability to fly while he had been drinking, and we arrived at an agreement that the Colonel would take the airplane off and Zozula would fly it to first gas stop while the Colonel went back on the couch and slept it off.

"Q. Now, did the Colonel and Zozula both participate in that agreement? A. Yes.

"Q. That was in your presence? A. That's right."

We hold that Horton and Zozula were fellow-servants as a matter of law and that, consequently, the District Court erred in allowing the plaintiff to recover from the defendant.

Our decision on the first question makes it unnecessary for us to consider the other two questions raised on this appeal. We think it not improper to say, however, that there is a grave question in the case as to whether the verdict should not have been directed on account of the action of Zozula in going up in a plane in charge of a pilot in a state of intoxication. While there is evidence of one witness that Horton did not seem to him to be intoxicated, the evidence on the point is overwhelmingly to the effect that Horton was intoxicated and that Zozula knew it. See American Law Institute, Restatement of Torts, § 893, "Voluntary Exposure to Risk as a Defense."

For the reasons set out in this opinion, the judgment of the court below must be reversed.

Reversed.